# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| John Sexton,<br><br>    Plaintiff,<br><br>v.<br><br>Soo Line Railroad Company, d/b/a Canadian Pacific Railway, a Minnesota Corporation and d/b/a CP Rail System, a Minnesota Corporation, and Dakota Minnesota, & Eastern Railroad Corporation d/b/a Canadian Pacific, a Delaware Corporation,<br><br>    Defendants. | No. 3:23-CV-00031<br><br><br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff, John Sexton, brings this Complaint against Defendant, Soo Line Railroad Company, doing business as Canadian Pacific Railway, and Dakota, Minnesota & Eastern Railroad Company (DM&E"), all hereafter referred to collectively as "CP Rail." In support, Mr. Sexton states and alleges as follows:

## PARTIES

1. At all material times Mr. Sexton resides in, and resided in, Davenport, Iowa.

2. Defendant Soo Line was and is an interstate carrier, operating an interstate system of railroads in and through several states, including Iowa and in the District where this action is filed.

3. Defendant DM&E is a subsidiary of Soo Line Railroad Company d/b/a Canadian Pacific Railway and is under the exclusive control of Soo Line Railroad Company d/b/a Canadian Pacific Railway. This control includes providing the licensure for all its railroad

employees, providing all rules and policies for the employees like Plaintiff and providing all the directives and procedures for employees like Plaintiff.

4. Plaintiff was an employee of Soo Line Railroad, Canadian Pacific/Canadian Pacific Railway. Based upon information and belief, Plaintiff may have also been an employee of DM&E. Hereinafter the various Defendant railroads will be referred to collectively as "CP Rail."

5. At the time of the incidents giving rise to this claim, Soo Line was a Minnesota Corporation organized and existing as a railroad carrier engaged in interstate commerce. Soo Line maintains and operated its headquarters at 800 Soo Line Bldg, Minneapolis, Minnesota 55402, and was and is operating in the State of Iowa; and its registered agent for service of process in the state of Iowa is CT Corporation System, 400 East Court Avenue, Des Moines, IA, 50309.

## JURISDICTION AND VENUE

6. This action arises under the whistleblower protection provision of the Federal Rail Safety Act, codified at 49 U.S.C. § 20109. On or about June 30, 2021, Mr. Sexton filed a complaint with the Department of Labor's Occupational Safety and Health Administration ("OSHA") alleging that CP Rail had violated one or more protections codified at 49 U.S.C. § 20109 when it took various adverse actions against him. This complaint was timely filed with OSHA as fewer than 180 days had passed since the complained of adverse employment actions. Sexton then filed his complaint with the Office of Administrative Law Judges at the Department of Labor ("OALJ"). More than 210 days have elapsed since Mr. Sexton filed that complaint at the OALJ and the Secretary of Labor has not issued a final decision.

7. Venue is proper in the Southern District of Iowa pursuant to 28 U.S.C. § 1391. A substantial part of the events, acts, and/or omissions giving rise to Mr. Sexton's claim in this action occurred in this judicial district. Mr. Sexton resides in this judicial district. And because CP Rail conducts business in this judicial district and has sufficient contact with this judicial district, this Court has jurisdiction over CP Rail.

**FACTUAL BACKGROUND**

8. On or about February 1, 2021, Mr. Sexton was on duty at Marquette, Iowa as the locomotive engineer for train 474-31, along with conductor Justin DePover.

9. Mr. Sexton and his crew conducted a job briefing in which Mr. Sexton determined there were unsafe conditions for operating the train due to the build-up of snow and ice on the tracks, causing a risk of derailment.

10. Mr. Sexton reported the unsafe condition of snow and ice build-up to Assistant Trainmaster Kurt McElvey and recommended that under CP Rail operating and safety rules his locomotive(s) would need to be separated from the train, which contained rail cars with hazardous materials, and the tracks would need to be cut with the locomotives to remove the snow and ice build-up and for the safe operation of the train.

11. McElvey instructed the crew that it would not be cutting anything, to get on the train, and depart the depot.

12. Mr. Sexton again reported the unsafe conditions to Mr. McKelvey and reminded him that two CP Rail trains had already derailed in the last month due to snow and ice buildup on tracks. Mr. Sexton then had Mr. McKelvey sign his Health and Safety Job Briefing Form to acknowledge that he was asking Mr. Sexton and his crew to violate CP Rail policy, and put the lives of the crew and public in harm's way—Mr. McKelvey signed the form.

13. Once on the train, Mr. Sexton and his crew had another job briefing and determined that they would refuse Mr. McKelvey's orders to work, and instead would cut the tracks as it was the safe course of action.

14. Towards the end of that very same shift, at around 12:49 hours, in CP Rail's Nahant Yard, CP Rail's manager, Tom Jared, walked up behind Mr. DePover who was communicating with Mr. Sexton over the radio and instructed Mr. DePover to stop communicating with Mr. Sexton. Mr. Jared later labeled this as an "efficiency test," however, no such test in the way conducted by Mr. Jared exists under CP Rail rules. Mr. Jared's actions were unsafe and in violation of CP Rail rules. Mr. Jared then recommended discipline against Mr. Sexton, alleging that Mr. Sexton violated CP rules during this unsafe and unsanctioned test. Mr. Jared used this alleged rule violation as justification for assessing discipline against Mr. Sexton.

15. On February 4, 2021, CP Rail issued a notice of investigation to Mr. Sexton to determine the facts and circumstances surrounding his "... alleged failure to stop within half the specified distance given while shoving into track NA04. This incident allegedly occurred at approximately 12:49 hours on February 1, 2021, while working Train 474-31 at Nahant Yard."

16. On February 10, 2021, CP Rail held an investigation to "determine the facts and circumstances and to place responsibility, if any" with his alleged efficiency test failure.

17. At the investigation, every witness present, except for manager Mr. Jared, testified that Mr. Sexton did not violate the rule in question.

18. On February 26, 2021, Soo Line informed Mr. Sexton by letter dated February 26, 2021, Superintendent Operations Jared found Claimant to be in violation of GCOR 5.3.7-Radio Response and assessed Mr. Sexton with a twenty (20) day suspension.

## **COUNT I – FEDERAL RAIL SAFETY ACT**

19. Each and every preceding paragraph is incorporated herein in its entirety by this reference.

20. Mr. Sexton engaged in a protected activity, as statutorily defined by the whistleblower-protection provisions of the Federal Rail Safety Act, codified at 49 U.S.C. § 20109(b)(1)(A), on February 1, 2021, when he reported, in good faith, a hazardous safety or security condition, surrounding snow and ice buildup at crossings, which he believed could cause a derailment.

21. Mr. Sexton engaged in a protected activity, as statutorily defined by the whistleblower-protection provisions of the Federal Rail Safety Act, codified at 49 U.S.C. § 20109(b)(1)(B), when he refused to operate a train with dozens of cars, including hazardous tank cars containing Hydrogen Fluoride Anhydrous Ammonia, for fear of a derailment, until he had properly cut the tracks with his locomotive(s) uncoupled from the train containing hazardous materials thus removing the snow and ice, per CP Rail rules.

22. Mr. Sexton engaged in a protected activity, as statutorily defined by the whistleblower-protection provisions of the Federal Rail Safety Act, codified at 49 U.S.C. § 20109(b)(1)(A), when he reported CP Rail Regional Manager Tom Jared's unsafe and rule violating actions of walking up behind a conductor protecting a shove movement and

telling the conductor to stop communicating with Mr. Sexton who was relying on such communication for the safe operation of the train.

23. CP Rail, its officers, and/or its employees took actions to reprimand, suspend, or in some other way discriminate/take adverse employment actions against Mr. Sexton, such as:

   a. On February 1, 2021, setting up an unsafe and unpermitted efficiency test;

   b. On February 4, 2021, CP Rail noticed a disciplinary hearing against Mr. Sexton;

   c. On February 10, 2021, CP Rail held an investigation to "determine the facts and circumstances and to place responsibility, if any" with his alleged rule violation;

   d. On February 26, 2021, CP Rail issued a 20-day suspension to Mr. Sexton, which subjects Mr. Sexton to the possibility of termination otherwise not permitted absent this discipline; and

   e. On or around the time of each of these events, CP Rail noted these things on Mr. Sexton's record, creating a potential for blacklisting.

24. At the time CP Rail took the above-described adverse actions, CP Rail, its employees, and/or its officers were aware that Mr. Sexton had engaged in the protected activity described above in paragraphs 20 to 22.

25. CP Rail's decisions to reprimand or discriminate in some other way against Mr. Sexton were due, in whole or in part, to his engagement in protected activity. This is evidenced by fact and circumstances including but not limited to:

   a. there is close temporal proximity between the protected activities and the adverse action;

   b. CP Rail's animus towards Mr. Sexton, and;

   c. CP Rail's selective interpretation and enforcement of its policies.

26. As a result of the action that CP Rail and its decision-makers took to reprimand or discriminate against Mr. Sexton, he has suffered damages that include but are not limited to:

    a. negative remarks in his personnel files that may lead to blacklisting;
    b. emotional distress and enjoyment of life; and
    c. other consequential damages including, but not limited to, litigation costs and reasonable attorney fees.

27. Based on all the allegations outlined above, Mr. Sexton demands and prays that the Court enter judgment in his favor and against Defendant, CP Rail for all relief necessary to make Mr. Sexton whole, including but not limited to relief in the form of:

    a. an award for emotional distress, pain, suffering, and loss of enjoyment of life;
    b. an award for any and all other compensatory damages, including litigation costs and reasonable attorneys' fees;
    c. an award for the negative tax consequences of any damages; and
    d. an award of any other costs, disbursements, and interest allowed by law and/or equity.

28. Mr. Sexton also prays for punitive damages not to exceed $250,000 under 49 U.S.C. § 20109(e)(3) to punish CP Rail for its unlawful activity and to deter CP Rail from engaging in such unlawful activity in the future.

**DEMAND FOR TRIAL BY A JURY**

29. Mr. Sexton hereby makes and files a written demand for a trial by jury in this action on all issues so triable under the appropriate governing authority.

**WHEREFORE**, Plaintiff John Sexton demands that judgment be entered against the Defendant in an amount sufficient to fully compensate him for all damages and losses he has and will suffer, together with his disbursements, interest, costs of this suit, and for such other relief the Court deems appropriate.

Dated: May 4, 2023                                          Respectfully submitted,

*/s/ Megan R. Merritt*
MEGAN R. MERRITT           AT0010635
                     for
SHUTTLEWORTH & INGERSOLL, P.L.C.
115 3rd Street SE, Suite 500
P.O. Box 2107
Cedar Rapids, IA 52406-2107
PHONE:      (319) 365-9461
FAX:          (319) 365-8443
E-MAIL:     mrm@shuttleworthlaw.com


/s/ John D. Magnuson
John D. Magnuson, *pro hac vice anticipated*
Cyle A. Cramer, *pro hac vice anticipated*
Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
Saint Paul, MN 55127
T: 651-288-9532
E: jmagnuson@yjblaw.com

ATTORNEYS FOR JOHN SEXTON