UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| John Sexton, | ) | |
| | ) | Case No. 23-cv-00031 |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF LAW** |
| | ) | **IN SUPPORT OF DEFENDANT'S** |
| Dakota, Minnesota, & Eastern Railroad | ) | **MOTION IN LIMINE TO EXCLUDE THE** |
| Corporation d/b/a Canadian Pacific, a | ) | **TESTIMONY OF BRANDON L. OGDEN** |
| Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Dated: August 5, 2024

DORSEY & WHITNEY LLP

Joshua Hughes (AT0014950)
hughes.joshua@dorsey.com
Dorsey & Whitney LLP
801 Grand Ave, Suite 4100
Des Moines, IA 50309
Tel: (515) 283-1000
Fax: (515) 598-7704

John T. Sullivan (pro hac vice)
sullivan.jack@dorsey.com
Briana Al Taqatqa (pro hac vice)
altaqatqa.briana@dorsey.com
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Tel:  (612) 340-2600
Fax:  (612) 340-2868

ATTORNEYS FOR DEFENDANT

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** .................................................................................................................. **1**

**SUMMARY OF FACTS RELEVANT TO THIS MOTION** ................................................. **1**

**I.    SEXTON CLAIMS HE WAS RETALIATED AGAINST IN VIOLATION
       OF THE FRSA.** ......................................................................................................... **1**

     A.    Sexton Violated CP's Operating Rules in February 2021. ...................................... 1

     B.    Sexton Received Discipline for His Rule Violation. .............................................. 3

     C.    Sexton Claims His Discipline Was Retaliation for a Train Delay. .......................... 4

**II.   SEXTON INTENDS TO INTRODUCE EXPERT OPINIONS RELATED
       TO HIS RULE VIOLATION AND CP'S DISCIPLINE DECISION.** .......................... **4**

**STANDARD OF ADMISSIBILITY OF EXPERT TESTIMONY** ........................................ **5**

**ARGUMENT** ....................................................................................................................... **6**

**I.    OGDEN'S OPINIONS ARE NOT RELEVANT OR HELPFUL AND MUST
       BE EXCLUDED.** ....................................................................................................... **6**

     A.    Ogden's Opinion that CP did not Prove Sexton Violated GCOR Rule 5.3.7
          is an Inadmissible Re-Examination of CP's Disciplinary Decision. ...................... 7

     B.    Ogden's Opinion that CP's Policies Present a Conflict of Interest is a
          Commonsense Assessment that will not Assist the Jury. ...................................... 9

     C.    Ogden's Opinion that CP Would not have Disciplined Sexton if he Hadn't
          Cut the Tracks is an Inadmissible Legal Conclusion. ........................................ 11

**II.   OGDEN'S OPINIONS ARE NOT RELIABLE AND MUST BE
       EXCLUDED.** ........................................................................................................... **13**

     A.    Ogden's Opinion that Sexton did not Violate CP's Rules is Unreliable
          Because it is Based on an Incomplete and Selective Review of the Record. ....... 14

     B.    Ogden's Opinion that CP's Policies Present a Conflict of Interest is
          Unreliable Because it Ignores Relevant Evidence and Testimony. ..................... 15

     C.    Ogden's Opinion that CP Would Not Have Disciplined Sexton if He
          Hadn't Insisted on Cutting the Tracks is Nothing but Unreliable
          Speculation. ..................................................................................................... 18

**III.  OGDEN DOES NOT POSSESS SPECIALIZED KNOWLEDGE
       NECESSARY TO ASSIST THE JURY** .................................................................... **20**

**CONCLUSION** .................................................................................................................. **20**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. City of Pocahontas*,
  340 F.3d 551 (8th Cir. 2003) .......................................................................................8

*Amador v. 3M Co. (In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.)*,
  9 F.4th 768 (8th Cir. 2021) .......................................................................................13

*AXIS Specialty Ins. Co. v. N.H. Ins. Co.*,
  2017 U.S. Dist. LEXIS 14528 (W.D. Mo. 2017)....................................................11

*Barrett v. Rhodia, Inc.*,
  606 F.3d 975 (8th Cir. 2010) ..................................................................................6, 18

*Bliss v BNSF Railway Company*,
  Case No. 4:12cv3019, 2013 U.S. Dist. LEXIS 146101 (D. Neb. Oct. 9, 2013).....................12

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993).....................................................................................................5

*Deere & Co. v. Kinze Mfg., Inc.*,
  No. 4:20-cv-00389-RGE-HCA, 2024 U.S. Dist. LEXIS 52740 (S.D. Iowa Feb. 8, 2024)...............19

*Holmes Grp., Inc. v. RPS Prods.*,
  Civil Action No. 03-40146-FDS, 2010 U.S. Dist. LEXIS 102727 (D. Mass. June 25, 2010)...............19

*Kemp v. Tyson Seafood Group, Inc.*,
  2000 U.S. Dist. LEXIS 10258 (D. Minn. 2000) ............................................15, 18

*Khoury v. Philips Med. Sys.*,
  614 F.3d 888 (8th Cir. 2010) ...................................................................................13

*Kuduk v. BNSF Ry. Co.*,
  768 F.3d 786 (8th Cir. 2014) ........................................................................... *passim*

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)...............................................................................................13, 20

*Lauzon v. Senco Prods.*,
  270 F.3d 681 (8th Cir. 2001) ....................................................................................5

*Lee v. Andersen*,
  616 F.3d 803 (8th Cir. 2010) ....................................................................................7

*Marmo v. Tyson Fresh Meats, Inc.*,
  457 F.3d 748 (8th Cir. 2006) ..............................................................................15, 18

*Menz v. New Holland N. Am., Inc.*,
  507 F.3d 1107 (8th Cir. 2007) .................................................................................5

*Peters v. Woodbury Cty. Iowa*,
  979 F. Supp. 2d 901 (N.D. Iowa 2013)....................................................................11

*Roohbakhsh v. Bd. of Trs. of the Neb. State Colleges*,
  2019 U.S. Dist. LEXIS 190266 (D. Neb. Oct. 31, 2019) .................................11, 12

*Sardis v. Overhead Door Corp.*,
  10 F.4th 268 (4th Cir. 2021) .................................................................................18, 20

*Scott v. City of Sioux City, Iowa*,
    68 F. Supp. 3d 1022 (N.D. Iowa 2014)....................................................................9
*Steggall v. BNSF Ry. Co.*,
    Case No. 18-CV-5000, 2019 U.S. Dist. LEXIS 58239 (D. Neb. Apr. 4, 2019)
    ..............................................................................................................7, 10, 20
*U.S. v. Kime*,
    99 F.3d 870 (8th Cir. 1996) ...........................................................................7, 10
*United States v. Holmes*,
    751 F.3d 846 (8th Cir. 2014) ................................................................................7
*United States v. Vesey*,
    338 F.3d 913 (8th Cir. 2003) ..............................................................................19
*Wood v. 3M*,
    112 F.3d 306 (8th Cir. 1997) ..............................................................................13

**Statutes**

49 U.S.C. § 20109.......................................................................................................1

**Rules**

Fed. R. Evid. 104(a).....................................................................................................6
Fed. R. Evid. 403 .....................................................................................................7, 9
Fed. R. Evid. 702 ............................................................................................... *passim*
Fed. R. Evid. 702(3).................................................................................................14
Fed. R. Evid. 702(a).....................................................................................................7

## INTRODUCTION

In the most egregious of his inadmissible opinions, Brandon L. Ogden would tell the jury what was in the "back of the minds" and influenced individual supervisors when they took the actions that Plaintiff John Sexton ("Sexton") challenges in this retaliation case. Similarly, Ogden would improperly answer for the jury a key question they must decide in Sexton's case: Whether Defendant Dakota, Minnesota, & Eastern Railroad Corporation d/b/a Canadian Pacific ("CP") actually retaliated against Sexton in violation of the Federal Railroad Safety Act ("FRSA"). Finally, Sexton wants Ogden to testify that the CP officer who concluded Sexton violated an important operational rule was incorrect; in other words, he would set up the very re-examination of an underlying rule violation that the Eighth Circuit excludes in FRSA retaliation cases.

Ogden's opinions are exactly the sort of baseless and speculative testimony that Federal Rule of Evidence 702 excludes. CP respectfully requests that this Court grant its motion in limine to exclude his testimony from trial.

## SUMMARY OF FACTS RELEVANT TO THIS MOTION

The undisputed material facts of this case are set forth in detail in CP's Rule 56(a)(3) Statement of Material Facts filed in support of CP's Motion for Summary Judgment. CP incorporates its Statement of Material Facts here and summarizes relevant facts below.

## I.    Sexton Claims He Was Retaliated Against in Violation of the FRSA.

Sexton's operative Complaint (Dkt. 26) alleges retaliation in violation of the FRSA. 49 U.S.C. § 20109. Sexton's claim arises out of his failure to follow the rail industry's General Code of Operating Rules ("GCOR") on February 1, 2021, the discipline imposed as a result, and his disagreement with the discipline.

### A.    Sexton Violated CP's Operating Rules in February 2021.

Sexton is a locomotive engineer, and his job is to operate locomotives safely pursuant to

1

CP's operational rules and in compliance with the GCOR. Declaration of Briana Al Taqatqa ("Al Taqatqa Decl.") Ex. A (Sexton Dep. 13:25–14:14, 27:5–10). When working in a railyard, train crews may perform "shove movements," in which a locomotive is used to push train cars into position on open track where the cars may then stay until being connected to a train for transport to their next destination. *Id*. Ex. B (McInnis Decl. ¶ 5); *id*. Ex. C (Sexton Dep. Ex. 2 at CP_00340).

When performing a shove movement, the conductor communicates with the engineer by radio to inform the engineer about the distance remaining until the train must be stopped, which the engineer cannot otherwise see because the engineer is in the locomotive at the other end of the train. *Id*. Ex. B (McInnis Decl. ¶ 6); *id*. Ex. A (Sexton Dep. 29:1–19). The conductor typically communicates distance in "car counts"—the number of car lengths remaining until the train must be stopped. *Id*. Ex. A (Sexton Dep. 28:11–29:21); *id*. Ex. B (McInnis Decl. ¶ 7). The applicable GCOR, Rule 5.3.7, mandates that engineers must stop a shove movement within half the number of car lengths last called over the radio, if they receive no further instructions. *Id*. Ex. B (McInnis Decl. ¶ 8); *id*. Ex. A (Sexton Dep. 27:21-29:7); *id*. Ex. C (Sexton Dep. Ex. 2 at CP_00319).

At issue in this litigation is a shove movement performed by Sexton on February 1, 2021, in the Nahant yard in Davenport, Iowa. *See id*. Ex. A (Sexton Dep. 94:21–96:21). The last communication Sexton received from the conductor was "good for forty, fifteen cars to a stop." *Id*. Ex. A (Sexton Dep. 121:19–122:6). As a result, Sexton should have brought the train to a full stop within seven and one-half car lengths after that final communication. *Id*. Ex. A (Sexton Dep. 28:5–18; 126:19–23); *id*. Ex. D (Jared Dep. 148:16–149:3, 149:23–150:2, 166:2–167:24); *id*. Ex. E (Johnson Dep. 37:13–38:13, 39:3–25, 40:22–41:5). He failed to do so, and in fact shoved eleven cars before stopping. *Id*. Ex. A (Sexton Dep. 122:24–123:5; 126:19–23); *id*. Ex. D (Jared Dep. 148:16–149:3, 149:23–150:2, 166:2–167:24); *id*. Ex. F (Ross Dep. 119:4–14). His violation was

observed by CP Rail General Manager Operations – US West Division, Tom Jared, who was assessing Sexton's performance of the shove movement to determine his compliance with the requirements of GCOR 5.3.7. *Id*. Ex. A (Sexton Dep. 104:21–105:17); *id*. Ex. D (Jared Dep. 21:8–13, 24:21–25:10, 79:9–12); *id*. Ex. G (Jared Decl. ¶ 8).

### B.     Sexton Received Discipline for His Rule Violation.

Sexton's failure to stop the train within half the distance called over the radio violated GCOR Rule 5.3.7. *Id*. Ex. D (Jared Dep. 162:20–25); *id*. Ex. C (Sexton Dep. Ex. 2 at CP_00319); *id*. Ex. H (Johnson Dep. Ex. 35 at CP_00982). As a union employee, Sexton was entitled to a hearing before discipline could be assigned. *Id*. Ex. A (Sexton Dep. 22:5–18); *id*. Ex. I (Sexton Dep. Ex. 1 at CP_00256). CP held a hearing on February 10, 2021, where both CP and Sexton provided testimony and presented evidence. *Id*. Ex. A (Sexton Dep. 119:19–24); *id*. Ex. J (Sexton Dep. Ex. 10 at CP_000018-20). The presiding officer determined Sexton violated GCOR Rule 5.3.7. *Id*. Ex. E (Johnson Dep. 21:4–14); *id*. Ex. H (Johnson Dep. Ex. 35 at CP_00982). CP's Vice President Operations Southern Region, Jason Ross, independently reviewed the hearing investigation transcript and the discipline recommendation and determined the appropriate discipline was a 20-day suspension without pay, which was imposed on February 26, 2021. *Id*. Ex. D (Jared Dep. 75:13–78:21); *id*. Ex. F (Ross Dep. 48:12–14, 49:15–51:5, 115:5–116:19, 119:4–14); *id*. Ex. K (Sexton Dep. Ex. 12).

On May 20, 2021, Sexton's union appealed the discipline decision to the Public Law Board pursuant to the collective bargaining agreement and applicable regulations. *Id*. Ex. A (Sexton Dep. 127:21–129:2); *id*. Ex. I (Sexton Dep. Ex. 1 at CP_00256-257). On August 26, 2022, the Public Law Board ruled in the union's favor, and as a result, the February 26, 2021, discipline was removed from Sexton's record and his 20 days of pay was restored. *Id*. Ex. A (Sexton Dep. 127:21–129:2, 129:11–15); *id*. Ex. L (Sexton Dep. Ex. 13 at SEXTON 000015-18).

**C.    Sexton Claims His Discipline Was Retaliation for a Train Delay.[1]**

Even though his discipline was reversed, removed from his record, and he was compensated for the wages lost in 2021, Sexton continues to contest his 20-day suspension. Sexton claims Jared administered the February 1, 2021, operations test to retaliate against Sexton for an incident that occurred earlier the same day, when Sexton asserted that certain rail crossings needed to be "cut" (cleared of snow) before his train left the yard in Marquette, Iowa, for Nahant. *Id*. Ex. A (Sexton Dep. 129:25-130:12, 131:14–18). Sexton asserts that what he calls his insistence that the tracks be cut was the cause of the delay and, in turn, the cause for Jared to assess his compliance with applicable policies when performing the shove movement hours later—and then *also* the cause for the resulting discipline. *Id*. Ex. A (Sexton Dep. 140:14–141:2; 142:20–143:11). Sexton in effect speculates that *one* four-hour train delay (of which just *a few minutes* resulted from cutting the crossing) on *one* day in 2021 negatively impacted Jared's 2021 annual performance evaluation, which would in turn result in a lower 2021 incentive payment – and so was the motivation for retaliation. *Id.* Ex. A (Sexton Dep. 140:2–13; 148:5–149:12, 178:13-20).

**II.    Sexton Intends to Introduce Expert Opinions Related to His Rule Violation and CP's Discipline Decision.**

Ogden's March 21, 2024 report (the "Report") includes three opinions that echo Sexton's speculative theories: (1) Sexton did not violate CP's rules on February 1, 2021 and the Public Law Board was correct to grant Sexton's appeal; (2) Jared was motivated by his performance rating and bonus potential to administer the test and subject Sexton to discipline; and (3) CP would not have disciplined Sexton if he hadn't contributed to a train delay on February 1, 2021.

---

[1] In the Amended Complaint, Plaintiff also alleges he was retaliated against for complaining about conduct by a CP manager in January 2021. Ogden ignores those allegations in his report. *See generally* Al Taqatqa Decl. Ex. M (Ogden's March 21, 2024 Report).

## STANDARD OF ADMISSIBILITY OF EXPERT TESTIMONY

Fed. R. Evid. 702 requires this Court to serve as a gatekeeper and ensure that expert testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The court may permit expert testimony only if the proponent shows it is more likely than not that the witness is qualified as an expert and:

> (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (2) the testimony is based on sufficient facts or data;
>
> (3) the testimony is the product of reliable principles and methods; and
>
> (4) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The proponent of the expert testimony bears the burden to prove its admissibility." *Menz v. New Holland N. Am., Inc.*, 507 F.3d 1107, 1114 (8th Cir. 2007).

The Eighth Circuit employs a three-part test for determining the admissibility of an expert's testimony under Rule 702. *Lauzon v. Senco Prods.*, 270 F.3d 681, 686 (8th Cir. 2001) (citation omitted). First, expert evidence, like all other evidence, must be relevant. To be relevant, the expert's specialized knowledge must be useful to the jury in deciding an ultimate issue of fact. Second, the expert must be qualified to assist the finder of fact. Finally, the proposed evidence must be reliable. To be reliable, the evidence must satisfy *Daubert* and Rule 702. *Id*. As to the latter, in 2023, the Advisory Committee on Evidence Rules amended Rule 702 "to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 Advisory Committee Note (2023) (citing Fed. R. Evid. 104(a)). The Committee clarified that the Rule 104(a) preponderance-of-the-evidence standard applies to the admissibility *and* reliability requirements of Rule 702.

**ARGUMENT**

Sexton cannot meet his burden to prove Ogden's opinions are relevant or reliable, nor that Ogden is qualified to assist a jury in deciding the issues in this case for these reasons: First, Ogden's opinions are not relevant or helpful to a jury because they address questions irrelevant to Sexton's FRSA retaliation claim, commonsense if-then propositions, and legal conclusions. Second, Ogden's opinions are unreliable because they are based on an incomplete and selective review of the record. Third, Ogden is not qualified to assist the jury because his opinions do not rely on particularly specialized knowledge or experience. Because Sexton cannot meet his burden to prove Ogden's opinions are admissible under Rule 702, Ogden's testimony should be excluded from trial.

## I.    Ogden's Opinions Are Not Relevant or Helpful and Must Be Excluded.

Ogden's opinions are not relevant to Sexton's FRSA retaliation claim and are unnecessary to help the jury understand the evidence and the facts at issue. First, Ogden's opinion that CP was wrong to discipline Sexton is an improper reexamination of CP's discipline decision, which is not at issue in a FRSA retaliation claim. Second, Ogden's opinion that CP's policies create a conflict of interest is the sort of determination that a reasonable jury can make based on its own common sense, without the aid of an expert. Third, Ogden's opinion that CP would not have disciplined Sexton if not for his protected activity is a legal conclusion that invades the province of the jury on a question the jury is entirely capable of answering on its own. Accordingly, Ogden's opinions are not relevant or helpful and should be excluded.

Expert testimony is only relevant where such testimony is required to establish an element of a claim. *See, e.g.*, *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 981 (8th Cir. 2010). To be admissible in this case, evidence must be relevant to the elements of Sexton's FRSA retaliation claim. *See Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 789 (8th Cir. 2014). Expert testimony, even if relevant, is

subject to exclusion if its potential for prejudice substantially outweighs its probative value. *United States v. Holmes*, 751 F.3d 846, 851 (8th Cir. 2014); *see also* Fed. R. Evid. 403.

Rule 702 restricts expert testimony to that which "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "If the subject matter is within the jury's knowledge or experience, . . . the expert testimony [is] subject to exclusion because the testimony does not then meet the helpfulness criterion of Rule 702." *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010) (citations and quotations omitted). "[W]hen the layman juror would be able to make a commonsense determination of the issue without the technical aid of such an expert, the expert testimony should be excluded as superfluous." *Steggall v. BNSF Ry. Co.*, Case No. 18-CV-5000, 2019 U.S. Dist. LEXIS 58239, at *9 (D. Neb. Apr. 4, 2019) (citing *U.S. v. Kime*, 99 F.3d 870, 884 (8th Cir. 1996)).

### A.    Ogden's Opinion that CP did not Prove Sexton Violated GCOR Rule 5.3.7 is an Inadmissible Re-Examination of CP's Disciplinary Decision.

Ogden's opinion that CP did not prove that Sexton violated GCOR Rule 5.3.7 – Radio Response, and that the Public Law Board was correct in its decision to overturn Sexton's discipline, is irrelevant to establishing any element of Sexton's FRSA retaliation claim. To prevail on his FRSA retaliation claim, Sexton must establish a prima facie case by showing (i) he engaged in a protected activity; (ii) CP knew that he engaged in the protected activity; (iii) he suffered an adverse action; and (iv) the circumstances create an inference that CP intentionally retaliated against Sexton because of the protected activity. *Kuduk*, 768 F.3d at 789, 791. Put plainly, whether CP was *correct* in deciding that Sexton violated GCOR 5.3.7 is simply not at issue in this case.

The Eighth Circuit is clear that re-examining a railroad's decision regarding whether rules were violated is not at issue in a FRSA retaliation claim. In *Kuduk*, a railroad employee was terminated pursuant to BNSF's progressive discipline policy after committing a rule violation. *Id.*

at 787–8. Kuduk's violation occurred when he walked between the rails, known as "fouling the tracks." *Id.* at 788. In an attempt to reverse summary judgment for BNSF, Kuduk argued that "'serious questions exist as to whether [he] in fact committed the rule violation [] alleged,' in essence, that BNSF misapplied the fouling-the-track rule and thus wrongfully discharged him." *Id.* at 792. The Eighth Circuit flatly rejected that argument, stating "'federal courts do not sit as a super-personnel department that re-examines' an employer's disciplinary decisions." *Id.* The Eighth Circuit decided that without any evidence "connecting his protected activity to the discharge, Kuduk is not entitled to FRSA antiretaliation relief even if BNSF inaccurately concluded that he committed one of the Eight Deadly Decisions by fouling the tracks." *Id.* (emphasis added) (citing *Allen v. City of Pocahontas*, 340 F.3d 551, 558 n. 6 (8th Cir. 2003) ("[I]t is not unlawful for a company to make employment decisions based upon erroneous information and evaluations")).

Here, Ogden seeks to present to the jury the exact argument that the Eighth Circuit rejected in *Kuduk*. Report at 6. Specifically, Ogden purports to sit as a super-personnel department and re-examine CP's determination that Sexton violated GCOR Rule 5.3.7 on February 1, 2021. *Id.* Ogden opines CP should not have disciplined Sexton because the conductor described the track onto which Sexton was shoving the train to be "good for 40 cars" and Sexton stopped the move within half of that 40-car distance. *Id.* Ogden also opines that CP's discipline decision was wrong and the Public Law Board was correct to overturn it because Sexton's "investigation was not handled in a fair and impartial manner." *Id.*

However, even if Ogden is correct (he is not) and CP was wrong about Sexton's February 1, 2021, rule violation, Sexton is not entitled to FRSA anti-retaliation relief. This is true even if CP inaccurately concluded that Sexton committed a rule violation by relying on "questionable

evidence" or an "incorrect application of the rules." *See Kuduk*, 768 F.3d at 792. Rather, to prevail

on his FRSA retaliation claim, Sexton must prove that CP's decision to discipline Sexton for his

February 1, 2021, rule violation was not simply inaccurate – he must prove that the decision was

intentional retaliation for engaging in protected activity. *Id.* at 789, 791. Thus, Ogden's opinion

that CP's discipline was wrong is not relevant to any element of Sexton's FRSA retaliation claim,

will not assist the trier of fact, and is not admissible under Rule 702.

In addition to being unhelpful, Ogden's opinion will confuse and mislead the jury into

believing an issue in this case is whether CP was correct in its determination that Sexton violated

GCOR Rule 5.3.7. Accordingly, Ogden's opinion is unduly prejudicial under Rule 403 and not

admissible under Rule 702. *See Scott v. City of Sioux City, Iowa*, 68 F. Supp. 3d 1022, 1042–1043

(N.D. Iowa 2014) (excluding plaintiff's experts' opinions that were not relevant to elements of

retaliation claim and created the potential for prejudice and confusion of the issues to be decided).

For these reasons, Ogden's first opinion regarding CP's discipline decision does not meet

the admissibility requirements of Rule 702 and Rule 403 because it is not relevant and, if admitted,

it would be unduly prejudicial to CP. Thus, Ogden's first opinion should be excluded.

### B.    Ogden's Opinion that CP's Policies Present a Conflict of Interest is a Commonsense Assessment that will not Assist the Jury.

Ogden opines that CP's employee performance management and short-term incentive

policies present a conflict of interest because CP managers are incentivized to prioritize speed over

safety. Report at 6–7. Specifically, Sexton wants Ogden to tell the jury: (1) CP managers' short-

term incentive payments are tied, in part, to individual performance, (2) CP managers'

performance objectives are based on the performance of CP's rail system as a whole, and (3) the

connection between performance and incentive payments "creates a culture focused on speed"

because faster trains means "more money" for CP managers. Report at 6–7.

This opinion does not relate to scientific, technical, or other specialized knowledge beyond the province of a lay juror. Rather, Ogden's second opinion amounts to a commonsense if-then proposition: *If* employees meet their performance objectives, *then* they get an incentive payment or other benefits, like a promotion. Conversely, *if* employees do not meet their performance objectives, *then* their incentive payment may be lower, or they may not receive one at all. Because any juror who has had a job can understand this premise, Ogden's opinion is superfluous and should be excluded. *Kime*, 99 F.3d at 884 ("[W]hen the layman juror would be able to make a common sense determination of the issue without the technical aid of such an expert, the expert testimony should be excluded as superfluous.").

Sexton may argue expert opinion is necessary on this point because train performance metrics, such as "origin performance" and "terminal dwell" are technical and specialized terms unique to the railroading industry. *See* Report at 7. This is a red herring. The jury will hear CP's fact witnesses and Sexton testify regarding the meaning of railroad terminology. *See* Al Taqatqa Decl. Ex. N (CP's Interrogatory No. 13 Response at 4–7). With the benefit of fact testimony and evidence, a jury is capable of understanding that "terminal dwell," for example, means the amount of time between arrival to and departure from the rail yard. *Id*. This case is just like *Steggall v. BNSF Ry. Co.*, a Federal Employers' Liability Act ("FELA") case in which the plaintiff wanted to introduce an expert to opine about whether the railroad complied with certain policies and procedures. 2019 U.S. Dist. LEXIS 58239, at *7–11. The court excluded the expert's testimony because the jury was qualified to hear fact witness testimony and able to read and understand the policies at issue. *Id*. at *9–11. Thus, it was for the jury to make a commonsense determination on whether the railroad met its obligations. *Id*. at *11.

As in *Steggall*, the jury in this case will be qualified to draw its own conclusions about the

relevance and impact (if any) of CP's performance management program and short-term incentive payment plan. Because Ogden's second opinion is nothing more than a commonsense determination couched as an "expert" opinion, it should be excluded. *See id.* at *8–11.

### C.    Ogden's Opinion that CP Would not have Disciplined Sexton if he Hadn't Cut the Tracks is an Inadmissible Legal Conclusion.

Ogden opines that CP managers were influenced by CP's policies, which he says emphasize speed, to discipline Sexton. Report at 8. According to Ogden, CP managers have "a strong motivation" to discipline employees who delay trains. *Id.* Ogden further opines that CP managers have discretion in deciding whether to charge employees with rule violations and issue discipline. *Id.* Thus, Ogden intends to tell the jury that, absent Sexton's protected activities, which resulted in a delayed train because Sexton took the safe course, CP would not have issued discipline to Sexton for his rule violation. *Id.* Ogden's third opinion is an impermissible legal conclusion related to the causation element of Sexton's FRSA claim and should be excluded.

"An expert cannot testify as to matters of law, and legal conclusions are not a proper subject of expert testimony." *Roohbakhsh v. Bd. of Trs. of the Neb. State Colleges*, 2019 U.S. Dist. LEXIS 190266, *4–5 (D. Neb. Oct. 31, 2019). "Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *Peters v. Woodbury Cty. Iowa*, 979 F. Supp. 3d 901, 922, 924 (N.D. Iowa 2013) (holding that "an expert may not opine that the conduct in question transgressed the applicable legal standard, such as 'objective reasonableness.'"). "An expert's opinions that are phrased in terms of inadequately explored legal criteria or that merely tell the jury what result to reach are not deemed helpful to the jury, and thus, are not admissible." *AXIS Specialty Ins. Co. v. N.H. Ins. Co.*, 2017 U.S. Dist. LEXIS 14528, at *5 (W.D. Mo. 2017) (citation omitted). Additionally, "an expert cannot offer an opinion that [the] defendant violated a statute." *Roohbakhsh*, 2019 U.S. Dist. LEXIS 190266, at *5.

Here, Ogden makes the following impermissible legal conclusion:

Based upon my review of the facts and evidence in this case and my training and experience working as a manager for a Class I railroad, it is my opinion that CP Rail's policies, objectives, metrics, and goals placed on CP Rail management officials who participated in various capacities of the decisions to discipline Sexton were influenced by those policies to emphasize speed. ***It is my opinion that absent Sexton's protected activities, CP Rail would not have subjected him to discipline and ultimately suspend him without pay.***

Report at 8 (emphasis added). Ogden's opinion that CP would not have subjected Sexton to discipline if he hadn't engaged in protected activities is a legal conclusion that is outside the bounds of expert testimony. Like the expert in *Roohbakhsh*, Ogden is attempting to testify that CP's conduct violated the applicable legal standard for causation under the FRSA. *Roohbakhsh*, 2019 U.S. Dist. LEXIS 190266, at *5.

In another FRSA retaliation case, a witness was excluded from providing similar opinions. In *Bliss v BNSF Railway Company*, Case No. 4:12cv3019, 2013 U.S. Dist. LEXIS 146101 (D. Neb. Oct. 9, 2013), the plaintiff's expert witness, Dr. Namie, had a doctorate in social psychology. Despite his qualifications, the court excluded Dr. Namie's opinions because his "opinions represent[ed] his analysis of the evidence plaintiff's counsel disclosed to him, his determination of the respective witness' credibility, and his resulting conclusions on the ultimate issues of fact. Such testimony does not assist, but rather invades the province of, the jury." *Id*. at *38.

Like Dr. Namie's opinions in *Bliss*, Ogden's opinions do not assist the trier of fact, but instead interfere with the jury's function in deciding the elements of Sexton's FRSA retaliation claim. Instead of making a reasoned analysis of the facts based on some specialized knowledge or experience, Ogden is merely instructing the jury on what result to reach. This testimony is not relevant or scientifically valid and is inadmissible. Ogden's third opinion should be excluded.

## II.    Ogden's Opinions Are Not Reliable and Must Be Excluded.

Ogden's opinions are neither the product of valid methodology, nor a reliable application of a methodology to the facts of this case. Though couched as expert opinions, Ogden's conclusions are merely based upon his railroad experience, not on any scientific theory, technique, or methodology. Although Ogden has ten years of experience working for another Class I railroad, he does not have "specialized knowledge" related to the subject matter of this case. Further, Ogden's opinions rest on an incomplete and selective review of the record, including his choice to ignore material witness testimony that does not align with Sexton's theories of the case. For these reasons, Ogden's opinions are unreliable and inadmissible under Rule 702.

To satisfy the reliability requirement, "the testimony must be reliable or trustworthy in an evidentiary sense." *Amador v. 3M Co. (In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.)*, 9 F.4th 768, 777 (8th Cir. 2021) (citation omitted). The party offering expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying the conclusions is scientifically valid." *Khoury v. Philips Med. Sys.*, 614 F.3d 888, 892 (8th Cir. 2010) (citation omitted). Even if an expert uses "professional studies or personal experience," the expert must adhere to using "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). In addition, the facts of the case must also be applied to the methodology in a reliable way. *See* Fed. R. Evid. 702(3). If expert testimony is nothing but a subjective belief, it should be excluded as unreliable. Fed. R. Evid. 702 Advisory Committee Note (2000). Finally, expert testimony must be excluded if it is "so fundamentally unsupported that it can offer no assistance to the jury." *Wood v. 3M*, 112 F.3d 306, 309 (8th Cir. 1997).

**A.    Ogden's Opinion that Sexton did not Violate CP's Rules is Unreliable Because it is Based on an Incomplete and Selective Review of the Record.**

As explained above, Ogden's first opinion, that Sexton did not violate CP's rules on February 1, 2021, and the Public Law Board was correct in granting Sexton's appeal, is an inadmissible re-examination of CP's disciplinary decision and should be excluded on that basis. *See Kuduk*, 768 F.3d at 792. Even if the Court were to ignore *Kuduk's* prohibition about the subject of Ogden's opinion, however, the opinion should be excluded for the independently sufficient reason that he failed to employ a reliable methodology in forming his opinion, as required by Rule 702.

Ogden's opinions are the subjective result of him applying his railroad experience to an incomplete and selective review of the record. This does not satisfy the reliability requirement of Rule 702. Critically, in forming his opinion about whether Sexton violated GCOR 5.3.7, Ogden relies on Sexton's testimony about what happened on February 1, 2021, but ignores the contemporaneous written statement from the only eyewitness (other than Jared, who administered the test and determined Sexton failed), the conductor, who wrote "when shoving cars into NA04 track a car count of 15 was given and after no communication movement stopped after 11." *See* Al Taqatqa Decl. Ex. O (SEXTON 000008). Ogden also ignores the conductor's statement during the investigation hearing that "the next call was still clear for 40, had 15 until the stop." *Id*. Ex. J (Sexton Dep. Ex. 10 at CP_ 000067 (Tr. 50:23-24)). Because Ogden's opinion is not based on a review of the *complete* record, it is not supported by sufficient facts.

Second, in opining the Public Law Board was correct in granting Sexton's appeal, Ogden relies on the information recited in the August 26, 2022, Award, but ignores facts developed in discovery in this litigation. Report at 6. For example, Ogden concludes that Jared "chose to subject Sexton to discipline by conducting an e-test . . . and suggested Sexton be disciplined." *Id*. But

discovery showed that Jared did not review the hearing transcript, did not recommend Sexton's discipline, and was not the discipline decision maker. *Id*. Ex. D (Jared Dep. 75:13–78:21); *id*. Ex. F (Ross Dep. 48:12–14, 49:15–51:5, 115:5–116:19, 119:4–14); *id*. Ex. K (Sexton Dep. Ex. 12).

In *Kemp v. Tyson Seafood Group, Inc.*, the court granted the defendant's motion to exclude the plaintiff's expert because his opinions were "too speculative to provide assistance to the trier of fact, in that they are unacceptably removed from a factual basis." 2000 U.S. Dist. LEXIS 10258, at *24–25 (D. Minn. 2000). The court further held that the expert's opinions were "devoid of competent, factual predicates." *Id*. at *25. The same is true here, where the material facts—that Jared was not involved whatsoever in the decision to issue discipline to Sexton—render Ogden's first opinion unreasonable and inadmissible. *See id.* at *23–24.

Ogden has no methodology. He simply believes, based on his experience at a different Class I railroad and his selective review of the record, that CP was wrong to discipline Sexton. Report at 6. Ogden's incomplete review of the record renders his first opinion speculative and inadmissible under Rule 702. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006) ("Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case.").

### B.    Ogden's Opinion that CP's Policies Present a Conflict of Interest is Unreliable Because it Ignores Relevant Evidence and Testimony.

As described above, Ogden's second opinion, that CP's employee performance management and short-term incentive policies present a conflict of interest because CP managers are incentivized to prioritize speed over safety, is superfluous and should be excluded. But even if the Court determined Ogden's second opinion could be helpful to a jury, it should be excluded for the independently sufficient reason that it ignores the indisputable evidence. Instead, Ogden relies only on Sexton's speculation and, presumably, Sexton's counsel's representations and theories.

Accordingly, Ogden's second opinion does not satisfy the reliability requirement of Rule 702 and should be excluded.

In rationalizing his second opinion, Ogden offers the following unsupported conclusions:

- "CP Rail policies, programs, metrics, and goals presented a potential or actual conflict of interest for CP Rail management officials who exercised discretion in making decisions in this case, including disciplinary decisions." Report at 6.

- "[CP Managers' performance objectives] demonstrate[] the pressure put on management to emphasize train speed. This pressure creates a culture focused on speed." *Id*. at 7.

- "Ratings are a big deal for managers at CP Rail because the ratings are tied directly to a manager's potential for promotions, demotions, merit raises, and annual bonuses." *Id*.

Based on these unsupported conclusions, Ogden opines: "Jared was incentivized to track down Sexton's late train, perform an e-test on Sexton which in itself subjected Sexton to possible discipline, made the suggestion that Sexton failed the e-test, gave statements against Sexton in his disciplinary investigation, and suggested Sexton be disciplined." *Id*. A review of the material facts supported by evidence—as opposed to speculation—shows Ogden's opinion is based on an incorrect and incomplete review of the record.

First, Ogden incorrectly identifies McKelvey and Jared as the CP managers who made the "disciplinary decisions." *Id*. In fact, McKelvey had nothing to do with the efficiency test or subsequent discipline, and Jared was not involved in the decision to issue discipline to Sexton. Al Taqatqa Decl. Ex. D (Jared Dep. 21:8–13, 24:21–25:10, 75:13–78:21); *id*. Ex. F (Ross Dep. 48:12–14, 49:15–51:5, 115:5–116:19, 119:4–14); *id*. Ex. K (Sexton Dep. Ex. 12). Accordingly, Ogden's opinion that McKelvey and Jared were motivated by their 2021 speed-related performance objectives and bonus potential to subject Sexton to discipline for contributing to a 3.5-hour train delay on February 1, 2021, is entirely divorced from the evidence in the record. Report at 6–7. Even if McKelvey's and Jared's performance evaluations were relevant to this case (they are not),

Ogden only relies on parts of the performance evaluations—the parts that mention speed—while ignoring performance objectives tied to operating safely. *Id*. Ogden also ignores relevant testimony explaining that safety also is a factor in each performance objective that he reviewed. *See id.*

Second, Ogden's conclusions about "pressure put on management" and a "culture focused on speed" are inconsistent with the indisputable evidence. The only statement in the record that even marginally supports this conclusion is Sexton's subjective speculation. When pressed for any and all evidence to support his accusation that Jared had a retaliatory motive when deciding to perform the e-test, Sexton said only: "That's the way it is." Al Taqatqa Decl. Ex. A (Sexton Dep. 147:24–149:12, 158:6–21, 160:15–161:11). In contrast, both Jared and Ross testified that the efficiency test and disciplinary decision, respectively, were entirely unrelated to the 3.5-hour train delay on February 1, 2021. *Id*. Ex. D (Jared Dep. 128:19–129:8, 157:4–9, 186:21–187:15); *id*. Ex. F (Ross Dep. 95:16-23, 129:11–17); *id*. Ex. G (Jared Decl. ¶¶ 12, 13); *id*. Ex. P (Ross Decl. ¶¶ 6, 7). And both Jared and Ross testified that they supported Sexton's insistence on cutting the tracks, even if it resulted in a delay. *Id*. Ex. D (Jared Dep. 171:23–173:18); *id*. Ex. F (Ross Dep. 25:22–26:15, 26:24–29:5, 85:17–86:7, 131:4–13).

Third, Ogden's conclusion that "[r]atings are a big deal for managers" at CP is entirely unsupported. The truth is that system performance is one factor—among many, including safe operations—that bear on a manager's rating. *Id*. Ex. F (Ross Dep. 108:14–109:22); *id*. Ex. Q (Hanson Dep. 9:8–10:6); *id*. Ex. R (Johnson Dep. Ex. 41). And managers' individual performance ratings are just one factor in how CP calculates short-term incentive payments. *Id*. Ex. F (Ross Dep. 106:2–20); *id*. Ex. Q (Hanson Dep. 12:23–13:4, 14:16–22, 22:14–23:10, 28:7–29:6).

Finally, Ogden's conclusions about Jared are inconsistent with the facts. Ogden asserts that "Jared was incentivized to track down Sexton's late train" and e-test him, "which in itself subjected

17

Sexton to possible discipline." These conclusions are contradicted by undisputed facts. First, Jared was already in Davenport, Iowa before the February 1, 2021, train delay. *Id*. Ex. D (Jared Dep. 96:6–18); *id*. Ex. S (Jared Dep. Ex. 51); *id*. Ex. A (Sexton Dep. 186:18–187:4). Second, Jared is clear that he decided to conduct the e-test *before* he knew Sexton was the engineer of the train in question. *Id*. Ex. D (Jared Dep. 128:19–129:8, 157:4–9, 186:21–187:15). *id*. Ex. G (Jared Decl. ¶ 10). Similarly, Ogden wrongly asserts that Jared "suggested Sexton be disciplined," without considering relevant testimony to the contrary. *Id*. Ex. D (Jared Dep. 76:13–78:21); *id*. Ex. F (Ross Dep. 48:12–14, 49:15–51:5, 115:5–116:19, 119:4–14); *id*. Ex. K (Sexton Dep. Ex. 12).

In sum, Ogden's second opinion is untethered from and contradicted by the indisputable evidence in the record. Thus, his second opinion is unreliable, untrustworthy, and subject to exclusion under Rule 702. *Kemp*, 2000 U.S. Dist. LEXIS 10258 at *23–24 (expert testimony is inadmissible "when it 'is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable.'") (citations and quotations omitted).

### C.    Ogden's Opinion that CP Would Not Have Disciplined Sexton if He Hadn't Insisted on Cutting the Tracks is Nothing but Unreliable Speculation.

Ogden's third opinion, that CP would not have disciplined Sexton absent his protected activities, is an impermissible legal conclusion and should be excluded. In addition, this opinion should be excluded because it is speculative and thus does not satisfy the reliability requirement of Rule 702. *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021); *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (citing *Marmo*, 457 F.3d at 757).

Ogden opines "that absent Sexton's protected activities, CP Rail would not have subjected him to discipline and ultimately suspend him without pay." Report at 8. In forming this opinion, Ogden relies on the following speculative conclusions:

- "In my experience, metrics that can affect the bonus and performance rating of a manager are always in the back of their minds." *Id.*

- "CP Rail managers have a strong motivation to discipline an employee perceived to be delaying trains even if the delay is caused by taking the safe course." *Id.*

- "It is clear that Sexton was targeted, retaliated against, and wrongfully suspended for 20 days by CP Rail managers because he took the safe course of action in refusing McKelvey's order." *Id.*

First, Ogden's opinion about what is in "the back of the minds" of CP managers—as a class—is rank speculation through which Ogden purports to get inside the mind of fact witnesses who will testify at trial and cast aspersions about their motivations. Ogden's uninformed opinions about an individual's motivations are irrelevant on their face. *Deere & Co. v. Kinze Mfg.*, Inc., No. 4:20-cv-00389-RGE-HCA, 2024 U.S. Dist. LEXIS 52740, at *29 (S.D. Iowa Feb. 8, 2024) (expert opinions about witness's belief are not admissible) (quoting *Holmes Grp., Inc. v. RPS Prods.*, Civil Action No. 03-40146-FDS, 2010 U.S. Dist. LEXIS 102727, at *5 (D. Mass. June 25, 2010) ("An expert witness may not testify as to another person's intent. No level of experience or expertise will make an expert witness a mind-reader.")). It is the role of the jury to hear witness testimony and assess credibility at trial. *See United States v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003).

Second, Ogden's conclusion that CP managers have "strong motivation" to discipline employees for delaying trains is contradicted by the record evidence. As described above, both Jared and Ross testified that they supported Sexton's insistence on cutting the tracks, even if it resulted in a delay. Contrary to Ogden's unsupported conclusion, Ross testified that he had a conversation with Sexton and McKelvey after the February 1, 2021, discussion about the importance of cutting the crossings. Ross stated: "I had that conversation with McKelvey as well because I'm not going to tolerate people cutting the rules and taking shortcuts. I won't tolerate it for one minute." Al Taqatqa Decl. Ex. F (Ross Dep. 25:22–26:15, 26:24–29:5, 131:4–13).

Third, there is no evidence—only Sexton's speculation—that CP issued discipline to

19

Sexton because he "took the safe course of action" on February 1, 2021. To the contrary, Ross testified that the 474's delay had nothing to do with his later decision to suspend Sexton for 20 days: "[T]hat delay on 474, I hate to say it is probably not even something that popped up on my radar. In the middle of January and February that would have been the least of my concerns, that three hour delay on 474 for doing their job." *Id*. Ex. F (Ross Dep. 95:16-23, 129:11–17).

In sum, Ogden's third opinion is nothing more than a recitation of Sexton's speculation and unsupported conspiracy theory without any tether to the record evidence. Accordingly, Ogden's third opinion is speculative and must be excluded. *Sardis*, 10 F.4th at 281.

## III.    **Ogden Does Not Possess Specialized Knowledge Necessary to Assist the Jury.**

Under Rule 702, an expert may be qualified to give opinion testimony by their "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. It is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case. *See Kumho Tire*, 526 U.S. at 153, 156.

Ogden claims he is qualified to offer opinion testimony in this case because he has ten years of experience working for a railroad other than CP, BNSF Railway. Report at 3–4. Although Ogden worked for BNSF, Ogden does not have "specialized knowledge" necessary to assist the jury in deciding whether CP intentionally retaliated against Sexton in violation of the FRSA. *See Steggall*, Case No. 18-CV-5000, 2019 U.S. Dist. LEXIS 58239, at *9. In formulating his opinions, Ogden has not relied on any particularly specialized knowledge or experience. Rather, his opinions are merely an application of his personal experience as a BNSF railroader to Sexton's theories about why CP disciplined Sexton.

## CONCLUSION

For the reasons described above, CP respectfully requests that the Court grant its motion and enter an order excluding the expert opinion testimony of Brandon L. Ogden in this case.

Dated: August 5, 2024

DORSEY & WHITNEY LLP

/s/ Joshua D. Hughes
Joshua Hughes (AT0014950)
hughes.joshua@dorsey.com
Dorsey & Whitney LLP
801 Grand Ave, Suite 4100
Des Moines, IA 50309
Tel: (515) 283-1000
Fax: (515) 598-7704

/s/ John T. Sullivan
John T. Sullivan (pro hac vice)
sullivan.jack@dorsey.com
Briana Al Taqatqa (pro hac vice)
altaqatqa.briana@dorsey.com
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Tel:  (612) 340-2600
Fax:  (612) 340-2868

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2024, I caused the foregoing to be electronically served on Plaintiff via email to his counsel of record:

Megan R. Merritt
SHUTTLEWORTH & INGERSOLL, P.L.C.
115 3rd Street SE, Suite 500
P.O. Box 2107
Cedar Rapids, IA 52406
Phone: (319) 365-9461
Fax: (319) 365-8443
mrm@shuttleworthlaw.com

John D. Magnuson
Cyle A. Cramer
YAEGER & JUNGBAUER BARRISTERS, P.L.C.
4601 Weston Woods Way
St. Paul MN, 55127
Phone: (507) 330-4777
Fax: (651) 288-0227
jmagnuson@yjblaw.com
ccramer@yjblaw.com


 /s/ Joshua D. Hughes
Counsel for Defendant