IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| John Sexton, | Case No. 23-cv-00031 |
| Sexton, | |
| v. | Magistrate Judge Helen C. Adams |
| Dakota, Minnesota & Eastern Railroad Corporation d/b/a Canadian Pacific, a Delaware Corporation, | |
| Defendant. | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

DORSEY & WHITNEY LLP

Joshua Hughes (AT0014950)
hughes.joshua@dorsey.com
Dorsey & Whitney LLP
801 Grand Ave, Suite 4100
Des Moines, IA 50309
Tel: (515) 283-1000
Fax: (515) 598-7704

John T. Sullivan (pro hac vice)
sullivan.jack@dorsey.com
Briana Al Taqatqa (pro hac vice)
altaqatqa.briana@dorsey.com
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Tel: (612) 340-2600
Fax: (612) 340-2868

ATTORNEYS FOR DEFENDANT

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Kuduk v. BNSF Ry. Co.*, 768 F.3d 786 (8th Cir. 2014) ....................................................... 2, 3, 4, 5
*Murray v. UBS Securities, LLC*, 601 U.S. 23 (2024) ............................................................. 2, 3, 4
*DeFrancesco v. Union Rr. Co.*, 2012 DOL Ad. Rev. Bd. LEXIS 23, ARB Case No. 10-114 (2012)……………………………………………………………………………...…5

**Statutes**

49 U.S.C. § 42121(b)(2)(B) ................................................................................................................ 3

**Rules**

L.R. 56(b)(2)-(4). ................................................................................................................ 1

**REPLY ARGUMENT**

To defeat summary judgment, Plaintiff John Sexton ("Sexton") needed to demonstrate through admissible evidence that a genuine issue of material fact exists for every element of his Federal Railroad Safety Act ("FRSA") retaliation claim against Dakota, Minnesota & Eastern Railroad Corp. d/b/a Canadian Pacific ("CP"). He has not—and his failure is most starkly apparent in the single conclusory paragraph he devotes to trying to connect any alleged protected activity to the CP executive who decided his 20-day discipline. Summary judgment is warranted.

**I.      CP'S FACTS ARE ADMITTED OR SHOULD BE DEEMED UNDISPUTED.**

Opposing summary judgment, Sexton was required to file (1) a response to CP's statement of material facts expressly admitting, denying, or qualifying each of CP's assertions—with a citation to specific evidentiary material that supports any refusal to admit the statement, (2) a statement of additional material facts, and (3) a responsive appendix. L.R. 56(b)(2)-(4). Sexton did not file a statement of additional facts or a responsive appendix. Instead, Sexton filed a "Statement of Disputed Facts," which responds to CP's Statement of Material Facts (Dkt. 50-2). (*See* Dkt 57-1.) Sexton admits 56 of CP's 117 fact statements are undisputed.[1] The remainder of Sexton's responses denying or qualifying CP's fact statements fall short of the Local Rule 56(b) standard.

First, in response to 40 of CP's asserted facts, Sexton denies or admits in part, but does not cite to evidence that supports Sexton's refusal to admit the statement is an undisputed fact.[2] For example, in response to CP's assertion, "The fact that the 474-31 was delayed on February 1, 2021 did not motivate Jared to administer the efficiency test that day"—which is supported by Jared's deposition and declaration testimony, Sexton denies and argues there is "ample circumstantial

---

[1] *See* Dkt. 57-1 ¶¶ 1–5, 7–8, 11–14, 18, 20–22, 33–34, 39, 41–43, 47, 50, 53–54, 56–61, 64, 66–69, 72–73, 77, 82, 90–91, 93, 96, 98–101, 103–104, 106, 107, 112, 115–117.
[2] *See* Dkt. 57-1 ¶¶ 9, 10, 15, 19, 24, 25, 27, 28, 31, 32, 36, 40, 45, 46, 48, 49, 51, 62, 63, 70, 71, 75, 76, 78, 81, 83-89, 94, 95, 97, 108–111, 113.

1

evidence" connecting "Sexton's protected activities" to "Jared's adverse employment actions" without citing to **any evidence**. (Dkt. 57-1 ¶ 84.) For every paragraph where Sexton failed to cite evidence supporting his refusal to admit, the Court should deem CP's statement of fact undisputed.

Second, in response to 20 of CP's fact statements, Sexton denies or admits in part, but his denial is not responsive to the fact asserted.³ For example, in response to CP's assertion that Johnson recommended a 20-day paid suspension for Sexton, Sexton denies Sexton's discipline was consistent with CP's Hybrid Discipline & Accountability guidelines, but cites only to discipline issued to *other* employees. (Dkt. 57-1 ¶ 44.) Evidence of discipline issued to *other employees* does not support Sexton's refusal to admit that *Sexton's discipline* was consistent with CP's guidelines for assigning discipline. For every paragraph where Sexton's denial is not responsive to CP's assertion, the Court should deem CP's statement of fact undisputed.

## II. *KUDUK* IS CONTROLLING LAW IN THIS CIRCUIT.

Among the other elements of his FRSA retaliation claim, Sexton must prove that protected activity on his part "was a contributing factor in the adverse action." *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 789 (8th Cir. 2014).

The contributing factor element is critical—and CP and Sexton disagree over how this Court should assess the element. CP asks this Court to apply the controlling Eighth Circuit decision of *Kuduk v. BNSF Railway Co.*, which holds that the "contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity." *Id.* at 791. For his part, Sexton cites the U.S. Supreme Court's decision in *Murray v. UBS Securities, LLC*, 601 U.S. 23 (2024)—but does not explain if or how *Murray* affects *Kuduk*.

*Kuduk* is squarely on point, as it interprets the burdens of production required for a FRSA

---

³ *See* Dkt. 57-1 ¶¶ 6, 16, 17, 23, 26, 30, 35, 37, 38, 44, 52, 55, 65, 74, 79, 80, 92, 102, 105, 114.

2

retaliation claim on summary judgment. *See Kuduk*, 768 F.3d at 791. In contrast, *Murray* arose from a jury verdict finding that a securities firm violated the anti-retaliation provisions of the Sarbanes-Oxley Act of 2002. 601 U.S. at 28–31. In *Murray*, the Supreme Court concluded that Sarbanes-Oxley did not require a showing of retaliatory intent for the contributing factor standard to be met for claims under Sarbanes-Oxley and reversed a Second Circuit decision that had vacated the verdict. 601 U.S. at 37–39. While *Murray* construed the burdens of production set out in 49 U.S.C. § 42121(b)(2)(B), which sets standards for both Sarbanes-Oxley and the FRSA (and certain other federal claims), the *Murray* decision does not expressly mandate that the standard under *Kuduk* nor any other statute is abrogated or must be disregarded. Accordingly, *Kuduk* remains good law in the Eighth Circuit and therefore must apply to this action.

### III. SEXTON DOES NOT SHOW GENUINE ISSUES OF MATERIAL FACT FOR THE CONTRIBUTING FACTOR ELEMENT UNDER ANY STANDARD.

Summary judgment is warranted even if this Court applies *Murray* to the contributing factor theories advanced by Sexton, who fails to show any genuine issue of material fact exists as to whether any alleged protected activity was a factor that, "alone or in combination with other factors," affected in any way the outcome of his disciplinary proceedings and 20-day suspension.

#### A. Sexton Does Not Connect Protected Activity to Ross's Disciplinary Decision.

CP Vice President Operations Southern Region Jason Ross decided Sexton's discipline and did not consider any alleged protected activity on Sexton's part when doing so. (SOF ¶ 46; Appx. 416, 417.)[4] Specifically, Ross did not consider Sexton's disagreement with Assistant Trainmaster Kurt McKelvey on February 1, 2021, nor any delay of Train 474-31 when he decided Sexton's discipline. (*Id.*) Ross also was clear that General Manager Tom Jared did not have a role in

---

[4] Citations to "SOF ¶ __" are to CP's Statement of Material Facts (Dkt. 50-2) and to "Appx. __" are to CP's Appendix (Dkt. 50-3). Citations to "SODF ¶ __" are to Sexton's Statement of Disputed Facts (Dkt. 57-1).

3

deciding the discipline. (SOF ¶ 46.) Sexton responds to Ross's role in his discipline with a single conclusory paragraph discussing Ross's response to *McKelvey's* conduct—not Sexton's. (Dkt. 57 at 11.) Elsewhere, however, Sexton admits Ross's role in the 20-day suspension decision and, as for Jared's role, points to the uncontested facts that Jared was involved in the investigation process establishing Sexton's rule violation – which is a different process than deciding the discipline resulting from the violation. (*See* SODF ¶ 46.)

In sum, Sexton has not raised a genuine issue of material fact regarding Ross's disciplinary decision and its complete lack of connection with any alleged protected conduct, regardless of whether the Court applies the *Murray* or *Kuduk* contributing factor standards.

    **B.**    **Jared Tested Train 474's Engineer Without Knowing it was Sexton.**

Jared testified that he decided to administer an e-test to the engineer of Train 474 because the conditions facing the train at the Nahant yard presented an ideal opportunity to safely test compliance with GCOR 5.3.7. (SOF ¶¶ 80–83.) Jared testified that he did not know that Sexton was the engineer operating the train until after the test, and Sexton offers only conjecture in response based on emails that addressed the delay of Train 474. (*Id.*) But none of the emails refer to Sexton insisting the crossings needed to be cut. (Dkt. 54-1 at 2, 8–11.) Thus, there is still no evidence that Jared knew anything about Sexton's alleged protected activity (i.e. his insistence on cutting the crossings) at the time that he decided to administer the e-test.[5]

    **C.**    **There is no Evidence of Hostility nor Pretext.**

Sexton cites three text instant messages sent by McKelvey to show that McKelvey was frustrated with Sexton's slow work on February 1, 2021. Even if that was taken in the light most favorable to Sexton, there is zero evidence that Jared—the manager who administered the e-test—

---

[5]    The e-test is not an adverse employment action, for the reasons explained in CP's principal brief. (Dkt. 50-1 at 21–22.)

or Ross—the manager who made the discipline decision—had any hostility toward Sexton.

## IV. CP MET ITS BURDEN TO PROVE ITS AFFIRMATIVE DEFENSE.

Sexton asks this Court to apply the following test to decide whether CP carries its affirmative defense: Has CP demonstrated "through factors extrinsic to plaintiff's protected activity that the discipline which plaintiff was subjected to was applied consistently, within clearly established company policy, and in a non-disparate manner consistent with discipline taken against employees who committed the same or similar violations." (Dkt. 57 at 4–5 (citing *DeFrancesco v. Union Rr. Co.*, 2012 DOL Ad. Rev. Bd. LEXIS 23, ARB Case No. 10-114 (2012) (modifications omitted)).) CP satisfies the test provided by the alternate framework presented by Sexton. (*See* Dkt. 50-1 at 22–24.)

CP's Hybrid Discipline & Accountability Guidelines include a range of consequences for Major offenses including suspension for 20 days. (SOF ¶¶ 52–54.) A violation of GCOR 5.3.7 is a Major violation, and Sexton's 20-day suspension was squarely within the range set out in the guidelines. (SOF ¶¶ 8–9, 45–47.) In addition, as in *Kuduk*, CP thoroughly investigated Sexton's rule violation and referred the evidence and hearing officer's recommendation to a disinterested executive (Ross) for a decision. 768 F.3d at 792. Sexton's arguments about partially deferred suspensions actually show compliance with, not deviation from, CP's policies, as CP allows deferrals when employees accept responsibility for a rule violation—which Sexton did not. (SOF ¶¶ 51–64.) Finally, Sexton's complaints about the number of e-tests that Jared conducted in 2021 are without context or relevance, and there is nothing in the *DeFrancesco* test cited by Sexton that states otherwise. In sum, Sexton's evidence and argument does not rebut CP's affirmative defense.

## CONCLUSION

For these reasons and those set out in its principal brief, CP respectfully requests that the Court grant its motion for summary judgment.

Dated: September 3, 2024

DORSEY & WHITNEY LLP

/s/ Joshua D. Hughes
Joshua Hughes (AT0014950)
hughes.joshua@dorsey.com
Dorsey & Whitney LLP
801 Grand Ave, Suite 4100
Des Moines, IA 50309
Tel: (515) 283-1000
Fax: (515) 598-7704

/s/ John T. Sullivan
John T. Sullivan (pro hac vice)
sullivan.jack@dorsey.com
Briana Al Taqatqa (pro hac vice)
altaqatqa.briana@dorsey.com
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Tel:  (612) 340-2600
Fax:  (612) 340-2868

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

    I hereby certify that on September 3, 2024, I caused the foregoing to be electronically served on Plaintiff via ECF, which provides notice and a copy to Plaintiff's counsel and all other counsel of record:

Megan R. Merritt
SHUTTLEWORTH & INGERSOLL, P.L.C.
115 3rd Street SE, Suite 500
P.O. Box 2107
Cedar Rapids, IA 52406
Phone: (319) 365-9461
Fax: (319) 365-8443


John D. Magnuson
Cyle A. Cramer
YAEGER & JUNGBAUER BARRISTERS, P.L.C.
4601 Weston Woods Way
St. Paul MN, 55127
Phone: (507) 330-4777
Fax: (651) 288-0227
jmagnuson@yjblaw.com
ccramer@yjblaw.com


                                            /s/ Joshua D. Hughes
                                            Counsel for Defendant