IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

JOHN SEXTON,

               Plaintiff,

vs.

DAKOTA MINNESOTA & EASTERN
RAILROAD CORP.,

               Defendant.

3:23-cv-00031-HCA

ORDER GRANTING IN PART AND
DENYING IN PART

## I.     INTRODUCTION

On August 5, 2024, Defendant Dakota Minnesota & Eastern Railroad, Corp. d/b/a Canadian Pacific ("CP") filed a motion in limine to exclude the expert testimony of Brandon L. Ogden ("Ogden"). ECF No. 52. Plaintiff John Sexton ("Sexton") filed a resistance, ECF No. 55, and an amendment to the resistance with an additional exhibit, ECF No. 56. Defendant CP filed a reply. ECF No. 61. Defendant CP argues Ogden's expert opinions should be excluded because his report is unreliable, irrelevant, and unhelpful. Def.'s Br. Supp. Mot., ECF No 52-1. Plaintiff Sexton contests each of these characterizations. ECF No. 55. The Court deems the matter fully submitted and ready for ruling. [1] For the following reasons, the Court **grants in part and denies in part** the motion in limine.

## II.    ANALYSIS

Under Federal Rule of Evidence 702, an expert's testimony may be admitted,

[I]f the proponent demonstrates to the court that it is more likely than not that:

---

[1] The Court relies on the facts provided by both parties in their motions for summary judgment and associated filings and, for the sake of brevity, deems it unnecessary to restate those facts as they are adequately summarized in the Court's summary judgment order. *See* ECF Nos. 50-2–3, 51, 53-2, 54-1, 59-1–3, 60, 63-1.

(1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(2) the testimony is based on sufficient facts or data;
(3) the testimony is the product of reliable principles and methods; and
(4) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

District courts must conduct a "preliminary assessment of whether the reasoning or methodology underlying the [expert] testimony is scientifically valid and . . . properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993). In other words, the Court acts as a gatekeeper to "ensure that 'all scientific testimony is both reliable and relevant.'" *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006)). "To satisfy the reliability requirement, the party offering the expert testimony 'must show by a preponderance of the evidence . . . that the methodology underlying his conclusions is scientifically valid.' " *Id.* (quoting *Marmo*, 457 F.3d at 757). "To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue." *Id.* (quoting *Marmo*, 457 F.3d at 757). "Decisions concerning the admission of expert testimony lie within the broad discretion of the trial court." *Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 415 (8th Cir. 2005) (quoting *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 296 (8th Cir.1996)).

The Court's gatekeeping role is designed to protect the jury "from being swayed by dubious scientific testimony." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011). However, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo*, 457 F.3d at 758 (citing *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir.1998)). Generally, "the factual basis of an expert opinion

goes to the credibility of the testimony, not the admissibility." *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 778 (8th Cir. 2021) (citation omitted).

But "a district court may exclude an expert's opinion if it is 'so fundamentally unsupported' by its factual basis 'that it can offer no assistance to the jury.' " *Id.* (citations omitted); *Barrett*, 606 F.3d at 981 (holding that expert testimony will be inadmissible if "it is excessively speculative or unsupported by sufficient facts") (citation omitted). A district court is not required "to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

On March 21, 2024, Ogden submitted an expert report, including three opinions: 1) Plaintiff Sexton did not violate GCOR 5.3.7; 2) There is a conflict of interest in Defendant CP's policies; and 3) Defendant CP would not have disciplined Plaintiff Sexton in the absence of protected activity. Ex. M, Ogden's Expert Rep., ECF No. 52-3 at 6–8. Defendant CP contest the admissibility of all three opinions as irrelevant, unhelpful to a jury, unreliable, and lacking specialized knowledge. ECF No. 52-1 at 6–20.

A.     **Whether Ogden's Opinions are Based on Specialized Knowledge**

Defendant CP argues Ogden "has not relied on any particularly specialized knowledge or experience. Rather, his opinions are merely an application of his personal experience." ECF No. 52-1 at 20. In response, Plaintiff Sexton provided district court decisions rejecting similar *Daubert* motions, finding Ogden possessed specialized knowledge. ECF No. 55 at 12–13. Plaintiff Sexton argues Ogden used the same methodology in preparing Plaintiff Sexton's report as Ogden did "in each of the other cases in which he has been permitted to testify as an expert." *Id*.

The Court agrees with those courts finding Ogden has sufficient specialized knowledge or experience to "help the trier of fact to understand the evidence or to determine a fact in issue:"

> Ogden is qualified to testify as an expert on railroad operations and work practices. He worked for BNSF railroad for ten years including as terminal manager and superintendent of operations. In all the positions he worked, he was required to have knowledge concerning railroad transportation, mechanical and engineering instructions, industry rules, and safety standards. Additionally, in his managerial capacity, he was responsible for the oversight of the entire operation of the railroad, which included BNSF's transportation, mechanical, and engineering departments. Ogden's background, training, and experience demonstrate he is qualified to testify as proposed.

*Blackmore v. Union Pac. R.R. Co.*, No. 8:21CV318, 2023 WL 2213509, at *4 (D. Neb. Feb. 24, 2023) (citations omitted); *see* Fed. R. Evid. 702. As the district court of Nebraska noted, "Ogden's opinions are also based on scientific, technical, or other specialized knowledge and would assist the trier of fact," because he reviewed "nearly one hundred documents" in the record and applied his experience and technical training to reach his conclusions. 2023 WL 2213509, at *4.

In Plaintiff Sexton's case, Ogden reports he applied his technical training and specialized, railroad experience to the 46 separate, case-related documents he reviewed. ECF No. 52-3 at 4–5. The Court finds and concludes Ogden's opinions were based on specialized knowledge.

### B.    Whether Ogden's Opinions are Reliable

In a similar vein, Defendant CP argues Ogden's opinions are unreliable because the opinions are based on an "incomplete and selective review of the record." ECF No. 52-1 at 7, 14. "To satisfy the reliability requirement, the party offering the expert testimony 'must show by a preponderance of the evidence . . . that the methodology underlying his conclusions is scientifically valid.' " *Barrett*, 606 F.3d at 980  (quoting *Marmo*, 457 F.3d at 757). As discussed above, Ogden reports he analyzed 46 different documents from the record in reaching his opinions. ECF No. 52-3 at 4–5. These documents appear akin to the parties' summary judgment appendices and cover a broad swath of subject matter—including court and administrative filings, deposition transcripts,

emails, reports, internal policies, railroad regulations, incentive plans, and safety reviews. *Id*. 3–4. Defendant CP's characterization of Ogden's review of the record as "incomplete and selective" appears to be more a disagreement with Ogden's conclusions and the weight he afforded each of the pieces of evidence, rather than a legitimate dispute over the reliability of Ogden's opinions. This is a critique of the factual basis of Ogden's opinions rather than a question of Ogden's credibility. *See In re Bair*, 9 F.4th at 778.

Defendant CP argues in its reply brief Plaintiff Sexton proffered an outdated and inaccurate Federal Rule of Evidence 702 standard, referencing the 2023 advisory committee notes. ECF No. 61 at 1 ("The goal of the amendment was to make it so proponents may no longer assert that the sufficiency of an expert's foundation, and the application of an expert's methodology, are 'questions of weight and not admissibility.'"). *But see* Fed. R. Evid. 702, advisory committee notes (2023 amendments) ("The amendment clarifies that the preponderance standard applies to the three reliability-based requirements added in 2000—requirements that many courts have incorrectly determined to be governed by the more permissive Rule 104(b) standard."). However, even the 2023 advisory committee notes provide:

> It will often occur that experts come to different conclusions based on contested sets of facts. Where that is so, the Rule 104(a) standard does not necessarily require exclusion of either side's experts. Rather, by deciding the disputed facts, the jury can decide which side's experts to credit. "[P]roponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable. . . . The evidentiary requirement of reliability is lower than the merits standard of correctness.'"

Fed. R. Evid. 702 advisory committee notes (2023 amendments) (quoting advisory committee notes (2000 amendments); *see In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994). A dispute about contested, underlying facts is best left to the jury. Fed. R. Evid. 702 advisory committee notes (2023 amendments).

The Court finds and concludes Ogden's opinions were based on appropriate methodology and has provided a sufficient basis to support his opinions. *See id*. Defendant CP's criticisms are best left for "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." See *Daubert*, 509 U.S. at 596.

### C.     Whether Ogden's Opinions are Relevant

Defendant CP contends even if Ogden's opinions are reliable, they are irrelevant and must be excluded. ECF No. 52-1 at 6–12. "To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue." *Barrett*, 606 F.3d at 980  (quoting *Marmo*, 457 F.3d at 757). The Court will address the relevancy of each of Ogden's opinions in turn.

### 1.     Rule violation opinion

Defendant CP argues it is irrelevant to Plaintiff Sexton's FRSA retaliation claim whether Plaintiff Sexton actually violated the rule because it is a re-examination of Defendant CP's disciplinary decision not at issue in the case and not permitted under *Kuduk v. BNSF Railway*. ECF No. 52-1 at 7–9 (citing 768 F.3d 786, 789, 791 (8th Cir. 2014)). In *Kuduk*, the Court of Appeals for the Eighth Circuit wrote, " 'federal courts do not sit as a super-personnel department that re-examines' an employer's disciplinary decisions," holding an erroneous disciplinary action does not prove retaliation under the Federal Railroad Safety Act ("FRSA"). 768 F.3d at 792 (quoting *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 898 (8th Cir.2002)). Defendant CP uses this holding to suggest it would be inappropriate for the jury to consider whether Plaintiff Sexton violated GCOR 5.3.7. ECF No. 52-1 at 7–9.

The Court does not read *Kuduk* so restrictively. The *Kuduk* court indicates later in its opinion evidence of a flawed decision-making process can be relevant to disproving the railway's

affirmative defense *if* the plaintiff shows there is a nexus between the flawed disciplinary process and protected activity. 768 F.3d at 793. In his motion for summary judgment, and presumably at trial, Plaintiff Sexton argues Defendant CP mis-characterized his performance as a failure as a pretext to punish him for his protected activity. Whether Plaintiff Sexton has provided enough evidence to support recovery on this theory is not at issue in this motion in limine.[2] The Court does not find "there is simply too great an analytical gap between the data and the opinion proffered" such that it would be carte blanche unhelpful to a jury. *See Gen. Elec. Co.*, 522 U.S. at 146.

### 2.    Conflict of interest opinion

Next, Defendant CP argues Ogden's opinion regarding a conflict of interest is superfluous as a lay juror would understand "money talks" and not need an expert to explain how performance objectives and incentive plans are connected. ECF Nos. 52-1 at 9–11; 61 at 3. This is an over-simplification of Ogden's opinion. The Court finds and concludes Ogden's synthesized analysis of Defendant CP's "policies, programs, metrics, and goals," combined with his explanations of technical, railroad terminology could be helpful to a lay juror.

### 3.    Absence of protected activity opinion

Last, Defendant CP argues Ogden's final opinion stating he believes Plaintiff Sexton would not have been suspended if he had not engaged in protected activity is irrelevant because it is "an inadmissible legal conclusion." ECF No. 52-1 at 18–20. The Court agrees. *See S. Pine Helicopters, Inc. v. Phx. Aviation Managers, Inc.,* 320 F.3d 838, 841 (8th Cir. 2003) ("expert testimony on legal matters is not admissible") (citing *United States v. Klaphake*, 64 F.3d 435, 438 (8th Cir. 1995) ("As a general rule, 'questions of law are the subject of the court's instructions and not the subject of

---

[2] The parties argued this ad nauseum in the cross-motions for summary judgment—the Court declines the invitation to rehash the sufficiency of the evidence in this order as the Court thoroughly addressed the matter in its summary judgment order.

expert testimony.' ")). This is almost a verbatim, inverse recitation of Defendant CP's affirmative defense. *Compare* ECF No. 52-3 at 8 ("It is my opinion that absent Sexton's protected activities, CP Rail would not have subjected him to discipline") *with  Kuduk*, 768 F.3d at 789 (holding a defendant is "not liable if it 'demonstrates, . . . that [it] would have taken the same unfavorable personnel action in the absence of' " protected activity) (quoting FRSA, 49 U.S.C. § 42121(b)(2)(B)(ii)). Ogden may not testify about his belief Defendant CP would not have suspended Plaintiff Sexton absent protected activity.

## III.     CONCLUSION

For the foregoing reasons, the Court **grants in part and denies in part** Defendant Dakota, Minnesota & Eastern Railroad Corp.'s motion in limine, ECF No. 52.

IT IS SO ORDERED.

Dated March 31, 2025.

Helen C. Adams
U.S. Magistrate Judge