IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| John Sexton, | ) | Case No. 23-cv-00031 |
| Plaintiff, | ) | |
| v. | ) | Magistrate Judge Helen C. Adams |
| Dakota, Minnesota & Eastern Railroad Corporation d/b/a Canadian Pacific, a Delaware Corporation, | ) ) ) | **BRIEF IN SUPPORT OF DEFENDANT'S THIRD MOTION IN LIMINE** (RESISTED) |
| Defendant. | ) | |

COMES NOW Defendant Dakota, Minnesota & Eastern Railroad Corporation d/b/a Canadian Pacific ("DM&E"), by and through counsel, and hereby moves this Court for an Order in Limine limiting Plaintiff John Sexton ("Sexton"), his counsel, and his expert witness Brandon L. Ogden from referencing or presenting, during jury voir dire or any other stage of trial, (1) Ogden's March 21, 2024, written report, in full; (2) any testimony related to what the Court called the "rule-violation opinion"; and (3) testimony within what the Court called the "conflict of interest opinion" in which Ogden would purport to describe actual intentions or motivations of any individual DM&E manager. (*See* Dkt. 69 at 6–7). The evidence DM&E seeks to exclude is either irrelevant or, if relevant, evidence for which the probative value is grossly outweighed by the danger of unfair prejudice, confusion of the issues, and/or misleading the jury. In support, DM&E states as follows:

**INTRODUCTION**

On March 31, 2025, this Court granted in part and denied in part DM&E's Motion in Limine to exclude Ogden's testimony pursuant to Rule 702. (Dkt. 69 (the "Expert Order.") In the Expert Order, the Court excluded Ogden's third opinion, in which he would have testified that

DM&E would not have disciplined Sexton in the absence of Sexton's protected activity, as the opinion was an inadmissible legal conclusion. (Dkt. 69 at 7–8.) While this Court did not completely exclude Ogden's rule-violation opinion or his conflict-of-interest opinion pursuant to Rule 702, the Expert Order describes limits that cabin his testimony and that make his written report excludable under Rule 403. In addition, the Court's decision on the parties' cross-motions for summary judgment (Dkt. 68)—entered on the same day as the Expert Order—sets further limits on the relevance and admissibility of Ogden's opinions under Rule 402.

## RELEVANT BACKGROUND[1]

Sexton is a locomotive engineer required to follow DM&E's operational rules and the General Code of Operating Rules ("GCOR"). On February 1, 2021, Sexton violated GCOR Rule 5.3.7 during a routine efficiency test related to performing a "shove movement," where the locomotive pushes train cars into position on an open track (meaning the locomotive engineer is at the rear of the move and therefore is moving blindly, relying on directives from the conductor who oversees and "protects" the move). General Manager Operations US West Division, Tom Jared, initiated the efficiency test and assessed Sexton's performance, determining that Sexton failed to stop the train within half the distance last communicated by the conductor. As provided by the disciplinary process agreed to by DM&E and the union representing Sexton and other engineers, DM&E held an investigation hearing to gather evidence and hear from Sexton and other witnesses in order to determine whether Sexton had violated the GCOR 5.3.7. An otherwise uninvolved manager presided over the hearing, determined that Sexton had violated the rule, and recommended a 20-day suspension. After an independent review of the hearing materials, Vice President Operations Southern Region, Jason Ross, made the final decision to issue to Sexton a

---

[1] Only facts relevant to the Court's disposition of this Motion in Limine are included in this brief.

20-day suspension according to DM&E's discipline policy.

Ogden's opinions at issue in this Motion are:

1. **Rule Violation Opinion**.

Ogden intends to opine that Sexton "complied with the intent of" Rule 5.3.7 and that he thinks DM&E did not prove Sexton violated Rule 5.3.7 during its February 10, 2021, disciplinary investigation. (Appendix to Motions in Limine ("App.") at 18 (Expert Report of Brandon Ogden ("Ogden Report") at 6)). This Court determined that Rule 702 did not exclude Ogden's rule violation opinion, concluding that the analytical gap between Ogden's opinion and the underlying information was not so great "such that it would be carte blanche unhelpful to a jury." (Dkt. 69 at 7).

In its decision regarding the rule violation opinion, this Court did not discuss the substance or admissibility of Ogden's various statements within the opinion. For example, Ogden asserts that "it is clear [DM&E] Rail managers made a predetermined ruling [about Sexton] and failed to hold an impartial and unbiased investigation." (App. at 18 (Ogden Report at 6)). He also asserts that the "investigation was not handled in a fair and impartial manner, [but] rather, with notable animosity toward Sexton." (*Id.*) This Court did not rule on these specific statements in the Expert Order; instead, it noted that "evidence of a flawed decision-making process can be relevant to disproving the railway's affirmative defense *if* the plaintiff shows there is a nexus between the flawed disciplinary process and protected activity." (Dkt. 69 at 6–7) (emphasis in original). In its Order denying the parties' cross-motions for summary judgment, however, this Court ruled that Sexton could **not** show such a nexus, stating that "the efficacy of the hearing is only material if Plaintiff Sexton can show the hearing was flawed, at least in part, because of his protected activity. **This he cannot do.**" (Dkt. 68 at 25 (internal citation omitted) (emphasis added)).

### 2. Conflict of Interest Opinion.

Ogden also intends to opine that DM&E's "policies, programs, metrics, and goals presented a potential or actual conflict of interest for CP Rail management officials who exercised discretion in making decisions in this case, including disciplinary decisions." (App. at 18 (Ogden Report at 6.)) Ogden's report quoted from policies, a Short Term Incentive Plan, and employees' performance review forms, and gave his understanding of the definition of certain railroad terms; the Court concluded that his "synthesized analysis of Defendant [DM&E's] 'policies, programs, metrics, and goals,' combined with his explanations of technical, railroad terminology could be helpful to a lay juror." (Dkt. 69 at 7).

As with the rule-violation opinion, the Expert Order did not address many statements Ogden makes in the conflict of interest section of his report that go beyond analyzing policies or explaining terms and instead purport to state, as a matter of fact, actual motivations and intentions of specific individuals not otherwise supported by the record. (*See* Dkt. 69). For example, Ogden says that the policies put "pressure" on management and "creates a culture focused on speed." (App. at 19 (Ogden Report at 7)). Ogden goes on to assert that Jared "was incentivized to track down Sexton's late train, perform an e-test on Sexton which in itself subjected Sexton to possible discipline, made the suggestion that Sexton failed the e-test, gave statements against Sexton in his disciplinary investigation, and suggested Sexton be disciplined." (*Id.*) Ogden further opines about how unnamed coworkers would respond to his theory of Jared's actions, stating that it "creates a chilling effect on the workplace preventing other employees from wanting to take the safe course of action." (*Id.*)

## ARGUMENT

Motions in limine are an appropriate means to exclude inadmissible or prejudicial evidence

4

or argument before trial. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Evidentiary rulings, such as motions in limine, are within the discretion of the district court. *See United States v. Jirak*, 728 F.3d 806, 813 (8th Cir. 2013) (reviewing a motion in limine for abuse of discretion).

**I.      Ogden's Testimony about the Efficacy of the Investigation is Not Admissible.**

Ogden's first opinion attacks the efficacy of the February 10, 2021, investigation. To this end, he would testify about the motivations of DM&E managers, stating: "[I]t is clear [DM&E] managers made a predetermined ruling and failed to hold an impartial and unbiased investigation." ((App. at 18 (Ogden Report at 6)). He also asserts that the investigation "was not handled in a fair and impartial manner, rather, with notable animosity towards Sexton." ((App. at 18 (Ogden Report at 6)).[2] As noted earlier, this Court rejected the same assertions when made by Sexton in the parties' cross-motions for summary judgment. There, this Court held that the efficacy of the investigation into Sexton's rule violation was not material to the contributing factor element of his claim, and could be so only if Sexton had evidence linking any supposed flaws in the hearing to protected activity—which he did not:

> . . . Plaintiff Sexton argues [hearing officer Mark] Johnson's initial recommendation was based on a flawed investigation, because he was not allowed to have witnesses he requested. Plaintiff Sexton relies on the PLB finding as evidence of this. However, even if the Court finds a genuine dispute exists as to the efficacy of the hearing, to be appropriate to survive summary judgment, the dispute must be over a material fact, and the efficacy of the hearing is only material if Plaintiff Sexton can show the hearing was flawed, at least in part, because of his protected activity. **This he cannot do.**

(Dkt. 68 at 25–26.) As the Court explained, Sexton's protected activities are not mentioned in the

---

[2]     Ogden should not be allowed to present as "opinion" his agreement with or adoption of the August 22, 2022 decision of the Public Law Board ("PLB"), which should be excluded for the reasons set out in DM&E's Second Motion in Limine. (*See* App. at 18 (Ogden Report at 6) ("I agree with the Public Law Board's position that both on a procedural and substantive basis Sexton's discipline was unwarranted.")).

5

investigation hearing transcript, nor is there evidence to suggest that Johnson knew anything about protected activity. (*Id.*)

Given this Court's finding that there is no evidence linking any protected activity to any supposed shortcoming in how the investigation hearing was conducted, Ogden should not be allowed to opine about the investigation hearing at all—and in any event, should be barred from testifying regarding, referring to, or otherwise describing the February 10, 2021, investigatory hearing as "predetermined," not impartial, or biased. Those characterizations are not relevant to the claims in this case, as Sexton does not and cannot link any such flaws to protected activity on his part. The rule-violation opinion thus should be excluded under the Summary Judgment Order and Rule 402.

Even if Ogden's views were relevant, his various subjective characterizations in the rule-violation opinion are unfairly prejudicial to DM&E and so run afoul of Rule 403. Ogden does not apply GCOR 5.3.7 to the investigation hearing transcript and evidence and come to a conclusion about whether DM&E's decision was supported by witness statements and evidence. He subjectively characterizes the intent and motivation of managers, who he labels without support as acting "with notable animosity toward Sexton" and "fail[ing] to hold an impartial and unbiased investigation." His descriptions should not be admitted. *See Deere & Co. v. Kinze Mfg., Inc.*, No. 4:20-cv-00389-RGE-HCA, 2024 U.S. Dist. LEXIS 52740, at *29 (S.D. Iowa Feb. 8, 2024) (expert opinions about witness's beliefs are not admissible) (quoting *Holmes Grp., Inc. v. RPS Prods.*, Civil Action No. 03-40146-FDS, 2010 U.S. Dist. LEXIS 102727, at *5 (D. Mass. June 25, 2010) ("An expert witness may not testify as to another person's intent. No level of experience or expertise will make an expert witness a mind-reader.")).

**II.     Ogden's Opinion About DM&E Policies Must Be Limited to His "Synthesized Analysis" and Explanations of Terminology.**

If allowed to testify without limit, Ogden will engage in further mind-reading throughout the conflict-of-interest opinion, in which he makes further claims about the motivations and intentions of individuals he has never met and that are unsupported by evidence, including that Jared was "incentivized" by DM&E policies "to track down Sexton's late train, perform an e-test on Sexton which in itself subjected Sexton to possible discipline, made the suggestion that Sexton failed the e-test, gave statements against Sexton in his disciplinary investigation, and suggested Sexton be disciplined." (App. at 19 (Ogden Report at 7)).

This Court's earlier ruling in limine on Ogden's testimony related only to Ogden's summary of policies and explanations of terms. (Dkt. 69 at 7). To be consistent with this Court's Expert Order, Ogden's "synthesized analysis" must be just that: an analysis of policies, programs, metrics and goals—and not license for Ogden to speculate about why individual employees took specific actions due to the policies and goals as Ogden interprets them. Testimony from Ogden that Jared or anyone else was actually motivated to do anything is inadmissible, as Ogden has no personal knowledge of any employee's intentions or subjective motivations. Fed. R. Evid. 602. *See Deere & Co.*, 2024 U.S. Dist. LEXIS 52740, at *29 (expert opinions about witness's beliefs are not admissible); *Holmes Grp.*, 2010 U.S. Dist. LEXIS 102727, at *5 ("No level of experience or expertise will make an expert witness a mind-reader.").

As in *Deere & Co.*, Ogden's railroad experience does not make him a mind-reader. Thus, his conflict of interest opinion must be carefully limited to only a synthesized analysis of DM&E policies and explanations of railroad terms, with a clear, predetermined limit against his speculation about managers' individual or collective intent. *See id.*

7

**III.     Ogden's Report Should be Excluded.**

Finally, Ogden's written report should be excluded for all the reasons set out above and also for the reasons in the Expert Order, which excluded his third written opinion. Whatever testimony he is allowed to present should only be given in person, given the flaws throughout the written report.

## CONCLUSION

For the above reasons, Defendant respectfully requests the Court GRANT its Third Motion in Limine in its entirety.

Dated: January 22, 2026

DORSEY & WHITNEY LLP

/s/ Joshua D. Hughes
Joshua Hughes (AT0014950)
hughes.joshua@dorsey.com
Dorsey & Whitney LLP
801 Grand Ave, Suite 4100
Des Moines, IA 50309
Tel: (515) 283-1000
Fax: (515) 598-7704

/s/ John T. Sullivan
John T. Sullivan (pro hac vice)
sullivan.jack@dorsey.com
Briana Al Taqatqa (pro hac vice)
altaqatqa.briana@dorsey.com
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Tel:  (612) 340-2600
Fax:  (612) 340-2868

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

      I hereby certify that on January 22, 2026, I caused the foregoing to be electronically served on Plaintiff via ECF, which provides notice and a copy to Plaintiff's counsel and all other counsel of record:

Megan R. Merritt
SHUTTLEWORTH & INGERSOLL, P.L.C.
115 3rd Street SE, Suite 500
P.O. Box 2107
Cedar Rapids, IA 52406
Phone: (319) 365-9461
Fax: (319) 365-8443
mrm@shuttleworthlaw.com

John D. Magnuson
YAEGER & JUNGBAUER BARRISTERS, P.L.C.
4601 Weston Woods Way
St. Paul, MN 55127
Phone: (507) 330-4777
Fax: (651) 288-0227
jmagnuson@yjblaw.com

Cyle A. Cramer
NICHOLS KASTER, PLLP
80 South Eighth Street
4700 IDS Center
Minneapolis, MN 55402
Phone: (512) 256-3200
Fax: (612) 338-4878
ccramer@nka.com

                                /s/ *Joshua D. Hughes*
                                Counsel for Defendant