IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| John Sexton, | ) | Case No. 23-cv-00031 |
| Plaintiff, | ) | |
| v. | ) | Magistrate Judge Helen C. Adams |
| Dakota, Minnesota & Eastern Railroad Corporation d/b/a Canadian Pacific, a Delaware Corporation, | ) ) ) | **BRIEF IN SUPPORT OF DEFENDANT'S FIFTH MOTION IN LIMINE** (RESISTED) |
| Defendant. | ) | |

COMES NOW Defendant Dakota, Minnesota & Eastern Railroad Corporation d/b/a Canadian Pacific ("DM&E"), by and through counsel, and hereby moves this Court for an Order in Limine directing Plaintiff John Sexton ("Sexton"), his counsel, and his witnesses not to reference or present, during jury voir dire, or any other stage of trial, baseless and prejudicial allegations about DM&E's managers' conduct or their involvement in unrelated incidents or litigation. In support, DM&E states as follows:

**INTRODUCTION**

This case is not about alleged past conduct of DM&E's management employees. It is about Plaintiff John Sexton's February 1, 2021 rule violation, subsequent discipline, and current allegations that the discipline was retaliatory in violation of the Federal Railroad Safety Act ("FRSA"). During depositions of DM&E's managers, however, Sexton's counsel forced witnesses to testify regarding unrelated past conduct, including a wholly baseless allegation of illegal drug use, a fatal vehicle crash, and their limited involvement in unrelated litigation, including a Canadian derailment involving a different railroad that resulted in 47 deaths. DM&E files this motion in limine to prohibit Sexton's counsel from repeating these irrelevant lines of inquiry at trial, as they have no connection to the issues in this case and will unfairly prejudice DM&E and

confuse the jury.

## RELEVANT FACTUAL BACKGROUND[1]

This case arises out of Sexton's failure to follow DM&E's General Code of Operating Rules ("GCOR") on February 1, 2021, the discipline imposed as a result, and his disagreement with the discipline. Specifically, on February 1, 2021, Sexton violated GCOR Rule 5.3.7 when he failed to stop the train he was operating within half the distance specified by the conductor. Pursuant to Sexton's Collective Bargaining Agreement, DM&E held an investigation hearing and determined Sexton had violated the rule. Consistent with its discipline policy, DM&E issued Sexton a 20-day suspension for his major rule violation. Sexton alleges his discipline was retaliation in violation of the Federal Railroad Safety Act. 49 U.S.C. § 20109.

Several DM&E managers appear as characters in Sexton's narrative that the test that determined his rule violation and the resulting discipline were retaliatory.

- Kurt McKelvey was the Assistant Trainmaster on duty in Marquette, Iowa on February 1, 2021. Sexton and McKelvey disagreed about whether the rail crossings needed to be cleared of snow and ice that morning. Sexton claims McKelvey was angry with him for insisting on clearing the tracks. Ultimately, Sexton cleared ("cut") the rail crossings before proceeding with his work.

- Tom Jared was the General Manager who administered the efficiency test in Davenport, Iowa on February 1, 2021, which determined that Sexton violated GCOR Rule 5.3.7. Because Jared had administered the efficiency test and had witnessed Sexton's rule violation, he was the witness for the company at the investigation hearing.

- Jason Ross is the Vice President who reviewed the discipline recommendation and approved Sexton's 20-day suspension.

Sexton deposed all three managers. (*See* Appendix to Motions in Limine ("App.") at 32 (Jared Dep.); App. at 42 (McKelvey Dep.); App. at 49 (Ross Dep.)). During each deposition, Sexton's counsel examined the witness regarding topics that would be irrelevant, prejudicial, and

---

[1] Only facts relevant to the Court's disposition of this Motion in Limine are included in this brief.

harassing at trial.

At Jared's deposition, for example, Sexton's counsel posed the baseless question of whether he had bragged at work about using illegal drugs:

> **Q:** Have you ever bragged to [DM&E] employees about using cocaine as a stimulant to help you stay up to speed with your job?
>
> **A:** No.
>
> **Q:** Have you ever bragged to [DM&E] employees about using cocaine period?
>
> **A:** Never.

(App. at 40 (Jared Dep. 195:3–9)). There are no allegations in the Amended Complaint nor a shred of evidence regarding drug use by Jared—or any other DM&E employee.

At McKelvey's deposition, Sexton's counsel questioned McKelvey about a motor vehicle incident he was involved in that resulted in a fatality. (App. at 46–47 (McKelvey Dep. 117:3–118:18).) This incident is entirely unrelated to Sexton's claims and happened long after the events at issue here, after McKelvey had relocated to a different region and was reporting to different managers. Sexton may assert that the incident is relevant because he thinks it shows McKelvey violated a rule but was not disciplined. However, the railroad and local law enforcement investigated the incident and determined McKelvey was not at fault. (App. at 46–47 (McKelvey Dep. 117:22–118:18)). Sexton's counsel provoked McKelvey about the incident:

> **Q:** But there are rules, [DM&E] rules, that prevent you from using your personal vehicle for work purposes. Right?
>
> **A:** Yes.
>
> **Q:** And you violated that rule it sounds like. Right?
>
> **A:** Yes.
>
> **Q:** But you weren't disciplined for that?
>
> **A:** No.

> **Q:** Lucky you.
>
> **MS. AL TAQATQA:** Objection, harassing.
>
> **A:** *Lucky me for being involved in a fatal incident?* Thank you, sir. I appreciate that.

(App. at 47 (McKelvey Dep. 118:4–118:15) (emphasis added)).

Finally, at Ross's deposition, Sexton's counsel questioned Ross about his testimony at a Canadian court proceeding related to a 2013 derailment of another carrier's train, which resulted in property damage and 47 casualties in Lac-Megantic, Canada. (App. at 53–54 (Ross Dep. 120:12–121:16)). The case was a class action lawsuit filed by individuals and business harmed by the disaster against several rail and oil companies, including the carrier whose train derailed and Canadian Pacific Railway, even though it did not operate the train in question. (App. at 54 (Ross Dep. 121:5–121:16)). Ross was a fact witness in the Lac-Megantic trial; his own conduct was not at issue in any way. (App. at 55 (Ross Dep. 123:2–123:17)). This irrelevant line of questioning ended with Ross stating:

> **A:** With all due respect, I went there. I answered the questions they asked me. I told everything to the best of my recollection. That's all I can say. It was not a great time in Quebec history, not a good time for the people of Lac-Megantic. We were in no way involved or responsible but there's always people that form different opinions.
>
> **Q:** Not a great time in the railroad industry period. Right?
>
> **A:** I'm more concerned about the people at Lac-Megantic. I have been to that town. I have met some of those people. A very sad thing to happen there because people were violating rules and people weren't holding people accountable, meaning the people who were in charge of the [Montreal, Maine and Atlantic Railway] including Transport Canada.

(App. at 56–57 (Ross Dep. 125:21–126:12)).

## ARGUMENT

**I.   APPLICABLE LEGAL STANDARD**

Under appropriate circumstances, motions in limine may be used to exclude inadmissible or prejudicial evidence or argument before trial. *Walzer v. St. Joseph State Hosp.*, 231 F.3d 1108, 1113 (8th Cir. 2000) ("Evidentiary rulings made by a trial court during motions in limine are preliminary and may change depending on what actually happens at trial.") (citing *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). Evidentiary rulings, such as motions in limine, are within the discretion of the district court. *See United States v. Jirak*, 728 F.3d 806, 813 (8th Cir. 2013) (reviewing orders in limine for abuse of discretion).

**II.   THE COURT SHOULD PROHIBIT SEXTON FROM EXAMINING DM&E MANAGERS ABOUT IRRELEVANT CONDUCT AND UNRELATED CLAIMS**

Jared and Ross are expected to testify at trial, and McKelvey's deposition testimony is likely to be presented. At their depositions, Sexton's counsel established a pattern of forcing the witnesses to respond to baseless accusations or testify about irrelevant events and unrelated legal proceedings. These matters have nothing whatsoever to do with Sexton's FRSA retaliation claim against DM&E. Thus, Sexton has no reason to question DM&E's managers about these matters other than to harass the witnesses. Even if these matters were nominally relevant (which they are not), testimony or argument regarding them is unfairly prejudicial, will confuse the issues, mislead the jury, and waste time. For these reasons, the Court should prohibit Sexton from referring to or presenting, during jury voir dire, or any other stage of trial, irrelevant conduct and unrelated claims.

**A.   The Testimony DM&E Seeks to Exclude is Not Relevant.**

The Court should grant this Motion in Limine and prohibit Sexton from forcing witnesses to respond to baseless accusations or testify about legal claims that have no relevance to this case. Evidence may be admitted only if it is relevant. Fed. R. Evid. 402. Relevant evidence is evidence

that "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. The elements of the claims are central in determining whether evidence is relevant. To succeed on his FRSA retaliation claim, Sexton "must establish a prima facie case by showing (i) he engaged in a protected activity; (ii) the defendant knew or suspected, actually or constructively, that he engaged in the protected activity; (iii) he suffered an adverse action; and (iv) the circumstances raise an inference that the protected activity was a contributing factor in the adverse action." *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 789 (8th Cir. 2014).

Here, there is no reason to question DM&E managers about baseless allegations and unrelated claims. With respect to Jared, Sexton's baseless questions about comments Jared never made about drug use do not make any fact relevant to any element of Sexton's FRSA retaliation claim more or less probable. The baseless questions have nothing to do with Jared's administration of the efficiency test on February 1, 2021, his participation in the investigation hearing, and his stamped signature on the letter imposing discipline on Sexton. (App. at 40 (Jared Dep. 195:3–9)).

Likewise, for McKelvey, his involvement in a motor vehicle incident that resulted in a fatality bears no relevance to the discussion between McKelvey and Sexton on the morning of February 1, 2021 regarding clearing the tracks of ice and snow. Sexton may assert the incident is relevant because he believes McKelvey violated a DM&E rule and was not disciplined, which indicates different expectations for DM&E managers and union employees. But this case is only about Sexton's violation of GCOR 5.3.7 on February 1, 2021, his subsequent discipline, and his claim that his discipline was retaliatory—and not about expectations set for managers.

With respect to Ross, his participation in the Lac-Megantic class action trial has no connection to the facts at issue in this case. The fact that Ross testified at a trial in a Canadian civil

suit that has nothing to do with DM&E but instead related to an incident that occurred nearly ten years ago is of no consequence to determining whether DM&E retaliated against Sexton for engaging in protected activity in violation of the FRSA. Further, the nature of the incident is likely to unfairly prejudice DM&E, as it would inform the jury about an incident that likely would concern them while implying Ross.

Because baseless allegations regarding DM&E's managers and their participation in unrelated litigation have no tendency to make the material facts more or less probable, the Court should prohibit Sexton's counsel from forcing DM&E's witnesses to testify regarding these topics.

**B.    The Testimony DM&E Seeks to Exclude is Unfairly Prejudicial and Confusing.**

Even if the testimony DM&E seeks to exclude was relevant to Sexton's FRSA retaliation claim—it is not—the Court should grant DM&E's motion because the testimony is unfairly prejudicial and will confuse the jury. Fed. R. Evid. 403.

As described above, Sexton's counsel demonstrated a pattern in discovery of questioning DM&E's witnesses about baseless or troubling topics, provoking an emotional reaction from McKelvey. (App. at 47 (McKelvey Dep. 118:4–118:15)). If permitted to proceed unchecked, DM&E expects Sexton will examine DM&E's witnesses regarding these topics to provoke a reaction in front of the jury. This creates the risk that jurors will consider the witness's reaction or the content of the baseless question, even with a proper limiting instruction, to the prejudice of DM&E.

For example, evidence regarding McKelvey's unrelated motor vehicle accident may result in a "mini-trial" about whether he should or should not have been disciplined as a result. Likewise, testimony about the Lac-Megantic class action litigation may confuse or mislead the jury about potential outcomes had Sexton not cleared the tracks of snow on February 1, 2021, particularly

because snow played no part in the Lac-Megantic accident.

Because these topics have no probative value in this case and have a significant potential to unfairly prejudice, confuse, and mislead the jury, the Court should prohibit Sexton's counsel from posing baseless and prejudicial questions or forcing DM&E's witnesses to testify about unrelated litigation. *See Pick v. City of Remsen*, No. C13-4041-MWB, 2014 U.S. Dist. LEXIS 146555, at *12–13 (N.D. Iowa Sep. 2, 2014) (Bennett, J.) (granting motion in limine to exclude evidence of irrelevant tire-slashing incident).

## CONCLUSION

For the above reasons, DM&E respectfully requests the Court GRANT its Fifth Motion in Limine in its entirety, and for any further such relief as deemed necessary by the Court.

Dated: January 22, 2026                                      DORSEY & WHITNEY LLP

/s/ Joshua D. Hughes
Joshua Hughes (AT0014950)
hughes.joshua@dorsey.com
Dorsey & Whitney LLP
801 Grand Ave, Suite 4100
Des Moines, IA 50309
Tel: (515) 283-1000
Fax: (515) 598-7704

/s/ John T. Sullivan
John T. Sullivan (pro hac vice)
sullivan.jack@dorsey.com
Briana Al Taqatqa (pro hac vice)
altaqatqa.briana@dorsey.com
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Tel:  (612) 340-2600
Fax:  (612) 340-2868

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

      I hereby certify that on January 22, 2026, I caused the foregoing to be electronically served on Plaintiff via ECF, which provides notice and a copy to Plaintiff's counsel and all other counsel of record:

Megan R. Merritt
SHUTTLEWORTH & INGERSOLL, P.L.C.
115 3rd Street SE, Suite 500
P.O. Box 2107
Cedar Rapids, IA 52406
Phone: (319) 365-9461
Fax: (319) 365-8443
mrm@shuttleworthlaw.com

John D. Magnuson
YAEGER & JUNGBAUER BARRISTERS, P.L.C.
4601 Weston Woods Way
St. Paul, MN 55127
Phone: (507) 330-4777
Fax: (651) 288-0227
jmagnuson@yjblaw.com

Cyle A. Cramer
NICHOLS KASTER, PLLP
80 South Eighth Street
4700 IDS Center
Minneapolis, MN 55402
Phone: (512) 256-3200
Fax: (612) 338-4878
ccramer@nka.com

                            /s/ *Joshua D. Hughes*
                            Counsel for Defendant