UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| John Sexton, | ) | |
| | ) | Case No. 3:23-cv-00031-HCA |
| Plaintiff, | ) | |
| | ) | |
| | ) | **DEFENDANT'S MEMORANDUM OF** |
| v. | ) | **LAW IN SUPPORT OF MOTION TO** |
| | ) | **STAY EXECUTION OF JUDGMENT** |
| Dakota, Minnesota & Eastern Railroad | ) | |
| Corporation d/b/a Canadian Pacific, a | ) | |
| Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## **INTRODUCTION**

Defendant Dakota, Minnesota & Eastern Railroad Corporation d/b/a Canadian Pacific

("DM&E") moves, under Federal Rule of Civil Procedure 62(b), for an order staying the

enforcement of judgment pending disposition of its post-trial motions. Pursuant to Local Rule 7(d),

DM&E submits this brief in support of its motion.

## **STATEMENT OF FACTS**

This action came before the Court for trial by jury. The jury found DM&E liable and

awarded Plaintiff John Sexton ("Sexton") $750,000 in emotional distress damages (Dkt. 151), and

$1.5 million in punitive damages.[1] (Dkt. 153.) On March 17, 2026, the Court entered judgment in

favor of Sexton in the total amount of $2,250,000.00 (the "Judgment"). (Dkt. 155.)

---

[1]   The punitive damages are subject to a statutory limit of $250,000. *See* 49 U.S.C. § 20109(e)(3).
DM&E has separately moved to amend the punitive damages award in the Judgment to the
statutory limit pursuant to Federal Rule of Civil Procedure 59(e) if the Court declines to grant
its requested alternative post-trial relief. (Dkt. 176-1).

On April 14, 2026, DM&E filed a motion for judgment as a matter of law, or in the alternative, for a new trial, or in the further alternative, for judgment to be amended (collectively, the "Post-Trial Motions"). (Dkts. 176, 176-1.) Pursuant to Rule 62(a), execution on the Judgment and proceedings to enforce it were stayed automatically until April 16, 2026. *See* Fed. R. Civ. P. 62(a). DM&E now seeks to obtain a further stay under Rule 62(b) pending the resolution of its Post-Trial Motions.

**ARGUMENT**

**I.      The Court Should Stay Execution of Judgment While DM&E's Post-Trial Motions Are Pending and Waive the Bond or Other Security Requirement of Rule 62(b).**

The Court should extend the 30-day stay of execution on the Judgment, without requiring a bond or other security, pending the resolution of the Post-Trial Motions. While Rule 62(b) contemplates a stay will generally be supported by "a bond or other security," the Court has discretion to "waive the need for security for a stay." *Belk v. Watson*, No. 19-cv-499, 2023 U.S. Dist. LEXIS 195482, at *3 (S.D. Ill. Oct. 31, 2023) (citing *Arban v. West Publ'g Corp.*, 345 F.3d 390, 409 (6th Cir. 2003)); *see also Mahaska Bottling Co. v. Pepsico, Inc.*, No. 4:16-cv-00114, 2020 U.S. Dist. LEXIS 263236, at *6 (S.D. Iowa Jan. 23, 2020) ("Rule 62(b) does not specify the amount of a bond or security to stay execution on a judgment, and the Court has discretion to determine whether to require a bond or security.") (citation omitted).

In deciding whether to waive security, courts consider "a number of factors including the degree of confidence the Court has in the defendant's ability to pay the judgment." *Belk*, 2023 U.S. Dist. LEXIS 195482, at *3–4. That is because the purpose, in large part, of requiring a bond or other security is to protect the judgment against the possibility of the judgment debtor's insolvency. *See Adams v. Toyota Motor Corp.*, Nos. 10-2802 ADM/JSM, 10-2804 ADM/JSM, 10-2805 ADM/JSM, 2015 U.S. Dist. LEXIS 76903, at *52 (D. Minn. June 15, 2015), *aff'd in part, rev'd in*

*part, and remanded on other grounds*, 859 F.3d 499 (8th Cir. 2017), *aff'd in part, rev'd in part, and remanded on other grounds*, 867 F.3d 903 (8th Cir. 2017). Where "a judgment debtor will clearly have the continued ability to satisfy the cost of the judgment," waiver is warranted. *Adams*, 2015 U.S. Dist. LEXIS 76903, at *52 (citing *Dillon v. City of Chi.*, 866 F.2d 902, 904–05 (7th Cir. 1988) (holding bond requirement inappropriate where "the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money")).

Other factors courts may consider when deciding whether a waiver is warranted include: "the complexity of the collection process"; "the amount of time required to obtain a judgment after appeal"; "whether the debtor's ability to pay is so plain that the cost of the bond would be a waste of money"; and "whether the debtor is in such a precarious financial position that posting a bond would jeopardize other creditors." *Willis Elec. Co., Ltd. v. Polygroup Ltd.*, No. 15-cv-3443 (JNE/DTS), 2024 U.S. Dist. LEXIS 69767, at *6–7 (D. Minn. Apr. 17, 2024).

In *Adams*, for example, the federal court waived the bond requirement, finding the debtor-company, Toyota, had shown its ability to satisfy the judgment. *Adams*, 2015 U.S. Dist. LEXIS 76903, at *53. Among other factors, the *Adams* court found Toyota's insurance coverage was sufficient to cover the judgment and the publicly-traded company's annual report showed net revenue and operating income that "exponentially" exceeded the amount of the judgment, while there was no evidence to indicate the company's financial situation would suffer in the near future such that it could not satisfy the judgment. *Id*. On the other hand, in *Patterson v. Howe*, the court denied the waiver request of the debtor-*individual*, whose "only evidence" was a "generally accurate" statement from over two years ago outlining his assets and liabilities. No. 1:16-cv-03364-KMB-SEB, 2023 U.S. Dist. LEXIS 75938, at *6–7 (S.D. Ind. May 2, 2023). In denying the waiver request, the court noted the authority cited by the debtor-individual that primarily addressed

large corporations or governmental bodies that had substantial assets; while unhelpful to the debtor-individual in that matter, the cases are persuasive here. *See id.* (citing *Prostyakov v. Masco Corp.*, 1:05-cv-1430-SEB-VSS, 2006 U.S. Dist. LEXIS 92628, at \*5 (S.D. Ind. Dec. 21, 2006) (finding bond not necessary where "defendant's financial situation is determinative," as the defendant was "a major, 70-year-old publicly traded company with approximately $606 million cash on hand and a market cap of $10.86 billion" and its "cash reserves are approximately 834 times the judgment amount; its market cap is about 14,942 times the amount"); *N. Indiana Pub. Serv. Co. v. Carbon County Coal Co.*, 799 F.2d 265, 281 (7th Cir. 1986) (finding bond not necessary when party had "assets of more than $4 billion, revenues of almost $2 billion a year, and a net worth of more than $1 billion," and as a "public utility, it is in no financial jeopardy, it is not about to place its assets beyond the reach of this judgment creditor, and it is, in short, good for the $181 million"); *Dillon*, 866 F.2d at 904–05 (holding city need not post bond when it had submitted affidavits outlining mode of payment of similar judgements against Chicago Police Department and showing fund from which judgment would be paid had a balance of hundreds of millions of dollars); *Watkins v. Kasper*, No. 3:05-CV-28-TS, 2008 U.S. Dist. LEXIS 83409, at \*5 (N.D. Ind. Oct. 17, 2008) (holding bond not necessary because state's tort claim fund had sufficient funds to pay judgment and the "relatively simple" process "to obtain a check to pay the Judgment" would take only "approximately two weeks to complete").

Here, as in *Adams* and the cases cited in *Patterson*, DM&E is now, and will continue to be for the foreseeable future, fully capable of satisfying the Judgment if it is ultimately sustained. DM&E is an indirectly, wholly owned subsidiary of Canadian Pacific Kansas City Limited ("CPKCL"), the holdings of which operate an integrated rail network of about 20,000 miles in

North America. (Exhibit A to Affidavit of J. Hughes ("2025 10-K") at 3.)[2] Although CPKCL's subsidiaries are operated as separate and distinct companies, because of the integrated nature of the rail network and its import to the investing community, CPKCL reports and analyzes its overall financial performance as one operating segment, rail transportation. (*Id.* at 4.) CPKCL's 2025 total revenues were CA$15 billion (approximately $11 billion USD as of December 31, 2025). (*Id.* at 37; "Treasury Reporting Rates of Exchange as of Dec. 31, 2025," Dept. of Treasury, Bureau of the Fiscal Service (2025).) CPKCL's U.S. operating railroad subsidiaries (*i.e.*, Soo Line Railroad Company, DM&E, Delaware & Hudson Railway Company, Inc., the Central Main & Quebec Railway U.S. Inc., and the Kansas City Southern Railway Company) earned total revenues of CA$5.1 billion ($3.7 billion USD). (2025 10-K at 109.) There is no evidence or reason to believe that DM&E, a freight railroad that has been operating successfully for decades, will suddenly become insolvent or cease operations.

Given that DM&E is and will continue to be fully capable of satisfying the Judgment, it respectfully requests the Court waive the bond or other security requirement contemplated in Rule 62(b).

## II.    If the Court Requires Security, DM&E Requests that It Accept a Corporate Guarantee from CPKCL.

If the Court determines security is required, DM&E requests that it accept a corporate guarantee from CPKCL. "Rule 62 was amended in 2018 'to make explicit the opportunity to post security in a form other than a bond.'" *Gruttemeyer v. Transit Auth. of Omaha*, No. 8:18CV70, 2020 U.S. Dist. LEXIS 252914, at *2 (D. Neb. Aug. 10, 2020) (citing Fed. R. Civ. P. 62(b) adv. comm. note (2018 Amendments)). The Rule does not mandate a particular form of security;

---

[2]    Page references to the 2025 10-K refer to the printed page numbers on the 2025 Form 10-K document itself, and not the ECF-generated pagination on the file-stamped document.

instead, courts may approve "other security" so long as it adequately protects the judgment creditor during any stay. *See* Fed. R. Civ. P. 62(b). The touchstone is whether the proposed security preserves the status quo and ensures the creditor may collect if the judgment is ultimately upheld.

Even prior to the 2018 amendments, courts commonly granted stays without bonds, provided the judgment debtor offered acceptable alternative means of securing the judgment. *Hagen v. Siouxland Obstetrics & Gynecology, P.C.*, No. C 11-4047-MWB, 2014 U.S. Dist. LEXIS 95924, *2 (N.D. Iowa July 15, 2014) (approving letter of credit as alternative security); *Winfrey v. Simmons Foods Inc.*, No. 03-2237, 2006 U.S. Dist. LEXIS 70628, *2 (W.D. Ark. Sept. 28, 2006) (approving escrow fund as alternative security).

Corporate guarantees are an available financial assurance mechanism in circumstances in which security may be required. *See*, *e.g.*, U.S. Environmental Protection Agency, *Guidance on Financial Assurance in Superfund Settlement Agreements and Unilateral Administrative Orders* (April 6, 2015) (identifying corporate guarantees as an appropriate financial assurance mechanism in connection with specified CERCLA matters), *available at* https://www.epa.gov/sites/default/files/2015-04/documents/fa-guide-complete-2015.pdf; 30 Tex. Admin. Code § 37.551 (2024) (permitting public water systems to provide financial assurance by, among other means, corporate guarantee); 567 Iowa Admin. Code § 113.14(6)(a)–(i) (identifying "Corporate Guarantee" as a valid financial assurance instrument for solid waste landfills).

As a public company, CPKCL, the proposed guarantor, maintains adequate provisions for legal actions in which it becomes involved through the normal course of its operations. (2025 10- at 106.) CPKCL also provides, in the normal course, contractual guarantees for its or, when appropriate, its subsidiaries' debt obligations arising from the integrated operations and accrues for all guarantees it expects to pay. (*Id.* at 108.) As of December 31, 2025, the total accrued for all

such guarantees was CA\$16 million (\$11.7 million USD)—or less than 0.6 percent of CPKCL's total accounts payable and accrued liabilities of CA\$2.75 billion (\$2 billion USD) as of that date. (*Id.* at 63, 108.) In the event the Court does not waive security for the stay, CPKCL proposes to provide exactly this sort of guarantee as security for the Judgment.

DM&E's proposed corporate guarantee provides all necessary protections while avoiding the undue and unnecessary burdens of a bond. The proposed guarantor, CPKCL, is a solvent, well-capitalized, and highly creditworthy entity. Its guarantee therefore provides sound financial backing and properly preserves the status quo pending post-judgment proceedings. Because Rule 62(b) vests the Court with discretion to approve adequate "other security," if the Court requires security, DM&E requests that the Court allow DM&E to secure a stay of execution on the Judgment with a corporate guarantee that DM&E secures from CPKCL.

### III.    If the Court Requires Security, It Should Limit the Amount to \$1 Million.

If the Court determines security is warranted to secure the Judgment, DM&E requests that the amount account for the statutory limit of punitive damages and exclude costs and post-judgment interest. First, the jury's punitive damages award of \$1.5 million far exceeds—by a multiple of six—the statutory cap of \$250,000. *See* 49 U.S.C. § 20109(e)(3). Even if DM&E is awarded no other post-trial relief, the Judgment must be amended to come within the law, *see* Dkt. 176-1, at 29–30, and security should be set only at the amended amount.

Second, DM&E requests that the Court exclude costs and post-trial interest from any security amount. The purpose of security is "to observe the status quo." *Nickel v. Evangelical Lutheran Good Samaritan Soc'y*, 4:17-cv-00126-HCA, 2019 U.S. Dist. LEXIS 242290, at *2 (S.D. Iowa, Jan. 18, 2019). Security is meant to protect the actual judgment, not speculative or variable amounts. Accordingly, if the Court requires DM&E to provide security, DM&E requests

the security be set at $1 million to account for the lawfully reduced punitive damages and to exclude costs and interest. *See, e.g.*, *id.* at 4 (excluding costs and post-trial interest).

### CONCLUSION

For the foregoing reasons, DM&E respectfully requests the Court stay the execution of Judgment pending disposition of DM&E's Post-Trial Motions and waive the requirement of a bond or other security. Alternatively, if the Court determines security is required, DM&E requests that the Court accept a corporate guarantee to secure the Judgment and, in any event, limit security to no more than $1 million.

Dated: April 16, 2026

DORSEY & WHITNEY LLP

/s/ *Joshua D. Hughes*
Joshua Hughes (AT0014950)
hughes.joshua@dorsey.com
Dorsey & Whitney LLP
801 Grand Ave, Suite 4100
Des Moines, IA 50309
Tel: (515) 283-1000
Fax: (515) 598-7704

/s/ *John T. Sullivan*
John T. Sullivan (pro hac vice)
sullivan.jack@dorsey.com
Briana Al Taqatqa (pro hac vice)
altaqatqa.briana@dorsey.com
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Tel:  (612) 340-2600
Fax:  (612) 340-2868

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

  I hereby certify that on April 16, 2026, I caused the foregoing to be electronically served on Plaintiff via ECF, which provides notice and a copy to Plaintiff's counsel and all other counsel of record:

Megan R. Merritt
SHUTTLEWORTH & INGERSOLL, P.L.C.
115 3rd Street SE, Suite 500
P.O. Box 2107
Cedar Rapids, IA 52406
Phone: (319) 365-9461
Fax: (319) 365-8443
mrm@shuttleworthlaw.com

John D. Magnuson
YAEGER & JUNGBAUER BARRISTERS, P.L.C.
4601 Weston Woods Way
St. Paul, MN 55127
Phone: (507) 330-4777
Fax: (651) 288-0227
jmagnuson@yjblaw.com

Cyle A. Cramer
NICHOLS KASTER, PLLP
80 South Eighth Street
4700 IDS Center
Minneapolis, MN 55402
Phone: (512) 256-3200
Fax: (612) 338-4878
ccramer@nka.com


             /s/ *Joshua D. Hughes*
             Counsel for Defendant